GROSS, Appellant,

v.

WESTERN–SOUTHERN LIFE INS. CO. et al., Appellees.   (Three cases.)

[Cite as *Gross v. Western–Southern Life Ins. Co.* (1993), 85 Ohio App.3d 662.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–910305, C–910306, C–910562.

Decided Jan. 29, 1993.

*John H. Metz,* for appellant Lester Gross in case Nos. C–910305 and C–910562.

*McCaslin, Imbus & McCaslin* and *Joseph K. Wehby,* for appellee Western–Southern Life Insurance Company in case Nos. C–910305 and C–910306.

*Rendigs, Fry, Kiely & Dennis, John F. McLaughlin* and *Carolyn A. Taggart,* for appellee Rubloff, Inc. in case No. C–910305.

*Keating, Muething & Klekamp, Gregory M. Utter, James R. Mathews* and *Pamela M. Hodge,* for appellee Great American Insurance Company in case Nos. C–910305 and C–910306.

*Waite, Schneider, Bayless & Chesley Co., L.P.A.,* and *D. Arthur Rabourn,* for appellant Kathleen M. Dannemiller in case No. C–910306.

*Gustin & Lawrence Co., L.P.A.,* and *R. Lanahan Goodman,* for appellee Dannemiller Electric Company in case No. C–910562.

*Per Curiam.*

On August 21, 1986, Lester Gross was severely injured and Scott Dannemiller was killed when the power distribution equipment they were repairing in the eighth-floor electrical closet of the 580 Building, located in downtown Cincinnati, exploded and burned. Both were employees of the Dannemiller Electric Company.[1]

Prior to the explosion, in the spring of 1986, Great American Insurance Company ("Great American"), a 580 Building tenant, requested that Rubloff, Inc. ("Rubloff"), the corporation managing the building for owner Western–Southern Life Insurance Company ("Western–Southern"), install additional air-conditioning capacity for Great American's eighth-floor computer center. Imperial Plumbing Heating and Air Conditioning Company ("Imperial") was selected as the general contractor for the installation. Dannemiller Electric was retained as an independent contractor to connect electrical service to the new air-conditioning unit.

To effect the hookup, Scott Dannemiller and his assistant, Lester Gross, used a metal fishtape to feed electrical wire through a conduit to the power source. The fishtape accidentally contacted a watt-hour meter in an electrical panel which supplied high-current, high-voltage electric power for the eighth-floor lighting system. A short circuit occurred which blew three limiters [2] attached to the watt-hour meter and damaged insulation within the watt-hour meter itself. The short circuit and the blown limiters deactivated the lighting circuit, thus eliminating overhead lighting in Great American's computer center. The computers remained in service. Several Great American employees intended to work in the center that evening.

To remedy the short circuit, Scott Dannemiller sought replacement limiters. None could be located in the building, so he ordered replacements from an electrical supply house. They would not be available until the next day.

Returning to the 580 Building, Scott Dannemiller attempted to restore power to the lighting circuits. He chose to "jump the breaker" by circumventing the damaged circuit breakers and limiters and drawing electricity directly from the main circuit.

Scott Dannemiller then donned long-sleeved rubber gloves in preparation for jumping the high-voltage circuit breaker. He stood on a piece of folded card-

---

1. Scott Dannemiller was not an officer or director of Dannemiller Electric, his family's business.

2. A limiter is a large, fuse-like device used in conjunction with circuit breakers on high-current circuits. A limiter is designed to quickly interrupt the flow of current in the event of a short circuit, thus protecting the electrical equipment on the affected circuit.

board as insulation. Gross, standing nearby, illuminated the panel with a work lamp. As Scott Dannemiller connected the wiring across the breaker, the panel erupted in an explosion and resulting fire.

Kathleen Dannemiller, executor of the estate of her deceased husband, Scott Dannemiller, and Gross brought suits against defendants-appellees Western–Southern, Imperial,[3] Great American and Rubloff, among others, alleging that Gross was injured, and Scott Dannemiller was killed, as a result of the appellees' negligence in maintaining an unsafe workplace and in failing to apprise Gross and Dannemiller of risks inherent in their tasks. Gross also brought suit against his employer, Dannemiller Electric, for intentional tort.

After extensive discovery and orders consolidating the suits, the appellees moved for summary judgment. On May 4, 1990, the trial court entered summary judgment for Imperial on Gross's claims. On March 28, 1991, the trial court entered summary judgment for Western–Southern, Great American and Rubloff on both Kathleen Dannemiller's and Gross's negligence claims. Three months later, on July 3, 1991, the court similarly entered summary judgment for Dannemiller Electric on Gross's claim of intentional tort.

Kathleen Dannemiller filed a timely notice of appeal, No. C–910306, from the judgment of the common pleas court. In her sole assignment of error, claiming that summary judgment was improvidently granted, she raises issues concerning the duty of care owed by the owners and occupiers of the 580 Building to the employees of Dannemiller Electric, an independent contractor hired to perform inherently dangerous tasks. Gross filed a notice of appeal, No. C–910305, in which he also raises, in five assignments of error, similar, though not identical, claims against the owners and occupiers of the 580 Building.

Gross also filed a notice of appeal in No. C–910562. In this appeal he assigns one error, namely, the trial court erred in granting summary judgment for Dannemiller Electric in Gross's action for intentional tort against his employer.

The appeals were consolidated for purposes of briefing, argument and decision. For the reasons that follow, we hold the appeal of Kathleen Dannemiller in No. C–910306 is without merit, and the appeals of Lester Gross in Nos. C–910305 and C–910562 are also without merit.

### A

In a large and complex case such as this, there are ordinarily numerous factual issues to be resolved. Yet, Civ.R. 56 does not exclude "factually and legally complex" cases from resolution by summary judgment. *Bowes v. Cincinnati*

---

3. Imperial was a defendant only in Gross's suit, now appealed as No. C–910305.

*Riverfront Coliseum, Inc.* (1983), 12 Ohio App.3d 12, 15, 12 OBR 97, 99, 465 N.E.2d 904, 908.

Summary judgment is a procedural vehicle used to terminate legal claims without factual foundation. *Celotex v. Catrett* (1986), 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–2555, 91 L.Ed.2d 265, 276. Summary judgment is appropriate where no genuine issue of material fact remains to be litigated which could establish the existence of an element essential to the nonmoving party's claim or defense. *Id.* at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273 (adopted by the Supreme Court of Ohio in *Wing v. Anchor Media, Ltd. of Texas* [1991], 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus); Civ.R. 56.

The mere existence of factual disputes between the parties does not, however, preclude summary judgment. "The dispute must be over a *material fact.*" (Emphasis *sic.*) *Mount v. Columbus & Southern Ohio Elec. Co.* (1987), 39 Ohio App.3d 1, 2, 528 N.E.2d 1262, 1263. In *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 210–212, the Supreme Court addressed which facts are material, stating that "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

Thus, we will not disturb the entry of summary judgment below unless appellants can, by evidence manifested in the record, identify factual disputes that affect the essential elements of their claims.

B

Kathleen Dannemiller, though raising only one assignment of error, contends that there are numerous factual issues that make this case inappropriate for summary judgment, including whether appellees negligently retained and pressured Scott Dannemiller to make repairs on the high voltage circuit, and whether they actively participated in the performance of Dannemiller Electric's tasks.

First, Kathleen Dannemiller points to alleged disputes as to whether Rubloff and Great American knew Scott Dannemiller was incompetent to perform the necessary repairs, and whether they nonetheless pressured or coerced him to expedite repairs of the lighting system because of the urgent need to restore lighting. From the existence of these disputes, she argues, a factfinder might reasonably conclude that appellees negligently retained Dannemiller Electric to perform the repairs on the high voltage system, damaged by Scott Dannemiller, under a second, implied-in-fact contract. We disagree.

After a thorough review of the record, we find no support for the contention that a second, implied-in-fact contract existed. The record makes manifest that Scott Dannemiller undertook the repairs and the fatal bypass procedure to remedy damage he caused while performing the work Dannemiller Electric was initially retained to perform. A second contract need not exist for an independent contractor to correct harm which he created.

■ Whether a second contract existed or not, Kathleen Dannemiller nonetheless contends that by pressuring Scott Dannemiller to make repairs, Rubloff and Great American breached their duty of reasonable care to the employees of Dannemiller Electric, an independent contractor. She alleges that Rubloff should have provided spare limiters, which some witnesses contended were available in the basement of the 580 Building, and that Rubloff and Great American knew Scott Dannemiller was unqualified to perform the repairs but nonetheless urged him to restore lighting quickly.

Appellees, however, contend that the building manager and various Great American personnel informed Scott Dannemiller that adequate lighting existed from desk and floor lamps to permit Great American employees to work overnight, and that repairs could wait until the next day.

Moreover, testimony, properly in the record, indicates that Dannemiller Electric had worked on high voltage systems before; that Scott Dannemiller had worked in the 580 Building before, albeit on lower voltage systems; that Scott Dannemiller advised the building manager that he had performed the bypass repeatedly and that he knew what he was doing; that the eighth-floor electrical closet was clearly marked with signs warning of high voltages; and that the amperage of each circuit was clearly marked.

Competent and often uncontroverted evidence negates the existence of any material factual disputes in the areas addressed by Kathleen Dannemiller in her argument. Even if the record would support her contentions, the question of the liability of owners and occupiers to the employees of an *independent contractor* does not turn on the factual disputes raised above. We find, therefore, no merit to Kathleen Dannemiller's initial contentions as they do not identify factual disputes that affect the essential elements of her claims.

■ Kathleen Dannemiller next contends that factual disputes remain as to whether appellees Great American and Rubloff are liable for their actions in directing the work of Scott Dannemiller, and whether Western–Southern is also liable as the principal of Rubloff.

■ Ordinarily, a party who engages the services of an independent contractor to perform an inherently dangerous task is not liable for injuries sustained by the independent contractor's employees. *Wellman v. East Ohio Gas* (1953), 160

Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph one of the syllabus. Primary responsibility for protecting the employees lies with the independent contractor itself. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165. This responsibility remains even when the independent contractor is retained to perform inherently dangerous or hazardous tasks involving electricity. See *Schwarz v. Gen. Elec. Realty Corp.* (1955), 163 Ohio St. 354, 56 O.O. 319, 126 N.E.2d 906; *Tedesco v. Cincinnati Gas & Elec. Co.* (C.A.6, 1971), 448 F.2d 332, 62 O.O.2d 37.

In *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, the court created an exception to the general rule holding that the party who retains the independent contractor can be liable if it actually participates in the inherently dangerous task and thereby negligently fails to eliminate a hazard to the independent contractor's employees.

This exception to *Wellman* was further narrowed in *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189. The Supreme Court stated in paragraph one of the syllabus:

"A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work."

Kathleen Dannemiller asserts that factual disputes remain as to whether appellees actively participated in Scott Dannemiller's work by negligently permitting him to perform work in the eighth-floor electrical closet, rather than the ninth-floor closet as originally planned, by failing to adequately supervise him, and by failing to stop his attempt to bypass the damaged breaker.

The undisputed evidence is that Dannemiller Electric was retained to connect electrical wiring to the eighth-floor air-conditioning unit in a safe manner. Testimony indicates that Stephen Dannemiller, president of Dannemiller Electric, and Scott Dannemiller selected the path the wiring was to take in response to an Imperial[4] work order of August 12, 1986. While there is a question as to whether the lower voltage source in the ninth-floor closet was, rather than the eighth-floor closet, the intended power source, it is uncontroverted that Dannemiller Electric alone selected the means or manner of installing the electric service. Moreover, Scott Dannemiller's failure to check in with the building manager prior to commencing work, after being cautioned to do so in the past, denied appellees the opportunity to question any change of plans.

---

**4.** We note that Imperial is not a defendant-appellee in Kathleen Dannemiller's appeal.

The record does not support the contention that there is any factual dispute as to appellees' lack of active participation in the selection of where Dannemiller Electric would perform its tasks or of where the electrical wiring should have been routed.

Kathleen Dannemiller next argues that Great American or others actively participated in the inherently dangerous work by granting Dannemiller Electric's employees access to the eighth-floor electrical cabinet, the higher voltage power source located within a high-security area of Great American's computer operations room.

The record is unclear as to exactly how Gross and Dannemiller gained access to the electrical room, and whether any of the appellees granted them access. Thus, while there remains an unresolved factual dispute concerning who, if anyone, gave access, we note again that this dispute is not a material dispute.

We are unaware of any authority which holds that granting access to a work site by itself constitutes active participation. While Great American and others may have known that Dannemiller and Gross intended to conduct repair or installation work in the electrical closet, that alone does not constitute active participation. See *Cafferkey*, 21 Ohio St.3d at 112, 21 OBR at 417, 488 N.E.2d at 192. We are convinced that active participation requires "some direct involvement in the work of the subcontractor * * * such as instructing a subcontractor as to 'how' to perform certain work rather than just 'where' and 'when' to perform the work." *Keffer v. Honda of Am. Mfg. Co.* (Dec. 7, 1990), Union App. No. 14–89–28, unreported, 1990 WL 197856.

Kathleen Dannemiller argues finally that appellees knew that Scott Dannemiller was going to bypass the damaged circuit breaker and limiters and negligently failed to stop him. She claims that numerous employees of Great American and Rubloff were present outside the electrical closet, and questioned Scott Dannemiller about the procedure, and yet none acted to stop the bypass. These facts are uncontradicted, but they do not raise a material dispute sufficient to defeat a motion for summary judgment.

The appellees' right to monitor the activities of an independent contractor is a function of their various supervisory capacities. Without more, however, this monitoring does not amount to active participation. *Cafferkey*, 21 Ohio St.3d at 113, 21 OBR at 418, 488 N.E.2d at 192; *Tedesco*, 448 F.2d at 337, 62 O.O.2d at 41 (owner's regular inspection of work and supply of specifications, materials and equipment insufficient to impose liability). The Supreme Court has clearly stated that mere knowledge of an independent contractor's conduct and failure to prohibit that conduct do not constitute active participation. *Cafferkey*. This is

especially so where the independent contractor alone possesses the expertise to determine the hazard involved in a procedure.

The evidence is uncontroverted that bypassing a four-hundred-eighty-volt circuit is not a complex job for an electrician. As Stephen Dannemiller testified:

"[I]t's not a high tech complicated connection, it's simply you proceed very, very, cautiously."

When questioned by Rubloff employees concerning whether it was safe to "jump the breaker," Scott Dannemiller replied that he had performed this procedure numerous times and that he knew what he was doing.

The record does not support Kathleen Dannemiller's contention that appellees actively participated to such a degree that they breached a duty of care by failing to eliminate a hazard to Dannemiller Electric's employees.

As we have found no active participation by Rubloff and Great American, there can be no vicarious liability on the part of Western–Southern, as the principal of Rubloff and as the lessor of Great American's offices.

We, therefore, find that no material facts remain in dispute as to the essential elements of Kathleen Dannemiller's claim in tort, or her newly raised claims sounding in contract. The trial court's entry of summary judgment was proper.

## C

Gross, in appeal No. C–910305, contends, in five assignments of error, that summary judgment was improvidently granted as genuine issues of material fact remain to be litigated. Three of his assignments, which raise issues of the negligent hiring of Dannemiller Electric and the active participation of appellees, are essentially identical to issues advanced by Kathleen Dannemiller and disposed of above. See Part B, *supra.* We need not, then, revisit these issues here.

In his third assignment of error, Gross contends that the owners and occupiers of the 580 Building breached both their common-law and statutorily imposed[5] duties of care to protect him from latent defects in the building's wiring system. He contends appellees failed to warn Dannemiller Electric of a defect in the building's ground-fault system. The existence of this defect, he alleges, contributed to the extreme hazardousness of Scott Dannemiller's attempted bypass of the eighth-floor circuit breakers.

While an electrical expert testified in deposition to support Gross's claim, the record is silent as to whether the owners or occupiers of the building knew of any alleged defect in the ground-fault system. Testimony by other experts indicates

---

5. R.C. 4101.11, the frequenters statute.

that the ground-fault system complied with electrical codes in use at the time it was installed, and that as configured in the 580 Building, the ground-fault system was not designed to guard against the hazards of "jumping a breaker."

Again we note that Gross's factual disputes do not question essential elements of his claims. As a precursor to alleging a breach of a duty, a party must establish the existence of that duty. *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732. The duty imposed on owners and occupiers by the common law, and by R.C. 4101.11, which codified the common law, to protect frequenters does not extend to the employees of an independent contractor engaged in inherently dangerous work. *Eicher; Schwarz.* That duty lies with the independent contractor. *Wellman.*

As Gross cannot identify factual disputes that affect the essential elements of this claim, his third assignment of error is without merit.

■■■ In his second assignment of error, Gross alleges that the trial court erred by refusing to consider the safety policies mandated by and contained in Rubloff's Property Manager's Handbook prior to ruling on appellees' motions for summary judgment. Gross contends that the handbook presents evidence of Rubloff's in-house procedures from which the trier of fact could infer negligence based on violations of those procedures by Rubloff personnel in the 580 Building. He further contends that Rubloff's eleventh-hour production of the handbook prejudiced his opposition to the motions.

The trial court's order granting Rubloff's motion for summary judgment contains the following explanation of the controversy:

"This matter came on before the Court on November 20, 1990, for report. During said conference the Court was informed by counsel for plaintiff, Lester Gross, that defendant, Rubloff, Inc., had been requested to produce its Property Manager's Handbook for the year of the incident in question, 1986, but had learned that no such handbook presently existed. The Court further learned at this conference that counsel for [Gross] had then requested that [Rubloff] produce its Property Manager's Handbook presently in effect. Over objection by counsel * * * the Court ordered that the current [handbook] be produced to counsel for [Gross].

"On February 11, 1991, [Rubloff] produced its current [handbook] at the time of the hearing on the merits of defendants' motions for summary judgment. On February 19, 1991, counsel for [Gross] examined the [handbook] and presented argument based upon the contents thereof, in plaintiff's Motion to Continue Summary Judgment (with 56[F] affidavits)."

Gross presents no evidence to controvert the fact that his counsel did see and review the handbook prior to the court's ruling.

Moreover, the court found that the contents of the February 1991 handbook were not relevant to any duties of the building manager five years before, in light of testimony that in-house procedures and policies had changed over time. We find nothing in the record to impugn the trial court's conclusion, and overrule Gross's second assignment in appeal No. C–910305.

### D

In his appeal No. C–910562, Gross alleges that his employer, Dannemiller Electric, acted intentionally and maliciously in assigning him to ultrahazardous tasks without proper training or safeguards, and under the supervision of another employee, Scott Dannemiller, who risked electrocution by "jumping" the high-voltage power panel.

In demonstrating the existence of an intentional tort, Gross bears the burden of establishing that Dannemiller Electric's actions were committed with the belief that an injury was substantially certain to occur. *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 631, 576 N.E.2d 722, 727.

As the Supreme Court has declared in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, at paragraph one of the syllabus, the test for establishing an intentional tort now requires proof of, among other things:

" * * * (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty."

In paragraph two of the syllabus, the *Fyffe* court emphasized that mere knowledge and appreciation of a risk to its employees is not sufficient to prove intent. The employer must have "actual knowledge of the exact dangers which ultimately caused injury." *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1116, quoting *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 112, 522 N.E.2d 489, 501.

Construing the evidence in a light most favorable to Gross, we acknowledge that the matters he raises, such as the lack of a safety training program at Dannemiller Electric, probable violations of city or industry safety codes, or violations of OSHA regulations, might demonstrate negligence on the part of Gross's employer. Such negligence may have resulted in an increased risk of electrocution to its employees. That Scott Dannemiller may have anticipated this increased risk of electrocution is borne out by his donning of long-sleeved insulated gloves and standing on a cardboard sheet to insulate himself.

Nonetheless, no evidence was presented which would permit the trier of fact to infer that Dannemiller Electric, through its employee Scott Dannemiller, knew of or anticipated the danger of explosion resulting from the "jumping." The record

is, moreover, silent as to any previous explosions or safety citations resulting from the "jumping" of circuit breakers by Dannemiller Electric employees.

Dannemiller Electric could not, therefore, have had actual knowledge of the exact injury that would be substantially certain to result from Scott Dannemiller's jumping of the power-panel contacts. As there is no genuine dispute of material fact concerning this element of Gross's claim, his only assignment of error in appeal No. C–910362 is overruled.

We affirm the judgments of the court of common pleas.

*Judgment affirmed.*

SHANNON, P.J., UTZ and GORMAN, JJ., concur.