OPINION.
Plaintiff-appellant Taylor Ivy, formerly Rose M. Thompson, appeals from the entry of summary judgment in favor of defendant-appellee Janis E. Eiler, M.D., on Ivy's claim for damages resulting from Eiler's disclosure, to Ivy's employer, of information contained in Ivy's medical records The employer had requested Ivy's medical records as part of the processing of her workers' compensation claim.
The substantive law that governs this matter is found in the tension between a patient's right to insist that her doctor withhold privileged medical information and a state agency's need to investigate and gather facts concerning an injury or occupational disease. The General Assembly has extinguished substantive rights of privilege in the interest of the efficient operation of the workers' compensation system. Because Ivy was required to authorize release of her medical records as a predicate to having her claim considered by the bureau of workers' compensation, and did authorize that release when filing her claim, the trial court properly entered summary judgment for Eiler.
 FACTS
In January, February, and March 1996, Ivy sought medical treatment from Eiler for depression, sinus trouble and arm pain. As a result of examinations and other diagnostic procedures conducted at an area hospital, Eiler determined that Ivy's arm pain was caused by carpal tunnel syndrome.
On May 9, 1996, Ivy filed a workers' compensation claim seeking to recover the medical expenses she had incurred in treating with Eiler for her carpal tunnel syndrome in January, February, and March of 1996. She signed an "Application For Payment of Medical Benefits Only" form, commonly called a "C-3," which included the following text immediately above the signature line:
READ CAREFULLY BEFORE SIGNING
* * *
 By signing this application I expressly waive all provisions of law which forbid any person, persons, or medical facility who heretofore did or who hereafter may medically attend, treat or examine me or who may have information of any kind which may be used to render a decision in my claim, from disclosing such knowledge or information to the Bureau of Workers' Compensation, its agents or the Industrial Commission.
Eiler completed a workers' compensation form for Ivy that included a diagnosis of carpal tunnel syndrome. Eiler noted that in her medical opinion the carpal tunnel syndrome was causally related to an industrial accident or injury. Ivy submitted the application to her employer, Michelman, Inc., so that the company could certify her claim to the bureau of workers' compensation. Later in May, Ivy again saw Eiler and received treatment for depression and other psychological problems, and for her sinus problem.
In August 1996, Ivy contacted Eiler's office manager requesting that additional records be released to her employer in support of her claim. She transmitted to Eiler's office a document that stated in its entirety,
To Whom It May Concern:
 I agree to release my physician's and or hospital records to Michelman, Inc. for the purpose of my Worker's Comp evaluation. Please accept this fax as authorization for you to release only the records regarding my Carpal Tunnel Syndrome to Michelman, Inc. and its representatives.
In violation of Eiler's in-office procedures, the office manager forwarded three pages of records from the January, February, and March 1996 office visits. Each of these records contained references to Ivy's carpal tunnel syndrome. Each also contained references to Ivy's treatment for depression. Eiler's office did not release any records that did not pertain, at least in part, to the occupational claim, such as the physician's notes for the May 1996 office visit for depression and sinus treatment.
The three forwarded pages were received by Michelman's workers' compensation processing office. When Ivy learned that the records contained information about her psychological treatments, she retrieved the records. She withdrew her workers' compensation claim "out of embarrassment" and began seeing a counselor. Ivy ultimately received treatment from a psychotherapist for anger and depression resulting from the disclosure of her records to her employer.
Ivy alleges that Eiler had negligently and carelessly breached a duty of confidentiality owed to her by permitting the release of privileged information, and that, as a result, Ivy had suffered mental and emotional distress. She sought to recover approximately $2000 incurred in treatment with the psychotherapist, as well as expenses related to future psychiatric treatment. Upon cross-motions for summary judgment, the trial court ruled in favor of Eiler, holding that Ivy had waived her right to confidentiality by filing a workers' compensation claim, and that the plain language of what she had sent to Eiler in August 1996 authorized the release of the records for the three office visits.
In a single assignment of error, Ivy asserts that factual disputes remain as to whether Eiler's release of medical information was authorized, in light of her instructions to release only the records regarding carpal tunnel syndrome for purposes of claim evaluation.
 SUMMARY-JUDGMENT STANDARD
The function of summary judgment is to determine from the evidentiary materials if triable factual issues exist. A motion for summary judgment shall be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. Civ.R. 56(C).
The moving party "bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280,293, 662 N.E.2d 264, 274. When, as here, the moving party discharges that burden, the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(E) showing that a triable issue of fact exists. Id. at 293, 662 N.E.2d at 274; Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798,801.
The mere existence of factual disputes between the parties does not necessarily preclude summary judgment. Only disputes over genuine factual matters that affect the outcome of the suit will properly preclude summary judgment. Factual disputes that are irrelevant should not stop the entry of judgment as a matter of law. See Gross v. Western-Southern Life Ins. Co. (1993),85 Ohio App.3d 662, 666-667, 621 N.E.2d 412,415, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510. Thus, we will not disturb the entry of summary judgment below unless Ivy can, by evidence manifested in the record, identify factual disputes that affect the essential elements of her claim.
confidential patient information AND THE WORKERS' COMPENSATION SYSTEM
Unauthorized Disclosure of Patient Information
In Biddle v. Warren General Hospital (1999),86 Ohio St.3d 395, 715 N.E.2d 518, former patients sued a hospital when they learned that the hospital, seeking recovery of outstanding bills, had hired a law firm to screen patient-intake forms to ascertain who was eligible for social-security reimbursements of medical expenses. The records disclosed to the law firm included each patient's name, address, birth date, employment information, and admitting diagnosis. The Ohio Supreme Court, ruling in favor of the patients, recognized that "an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." Id. at paragraph one of the syllabus.
It is beyond doubt that knowledge of Ivy's treatment for depression was nonpublic medical information learned within a physician-patient relationship. The question is whether that knowledge was privileged, and if so, whether its release was authorized.
In 1938, the Ohio Supreme Court recognized that the physician-patient privilege statute[1] conferred a substantive right upon a patient. The Industrial Commission had refused to act upon a claim until the claimant executed a waiver for the privileged communications he had with his treating physician. The court held that the Industrial Commission did not have the power to promulgate rules in contravention of the statutory physician-patient privilege. Therefore, the waiver could not be required as a condition precedent to the consideration of an application. State ex rel. Galloway v. Indus. Comm. (1938),134 Ohio St. 496, 17 N.E.2d 918, paragraph two of the syllabus. In 1984, the court reiterated that the commission could not require disclosure of a claimant's medical records as a condition for considering a claim. See State ex rel. Holman v.Dayton Press, Inc. (1984), 11 Ohio St.3d 66, 69,463 N.E.2d 1243, 1245. But the court noted that the commission could order the claimant to submit to a subsequent medical examination or, if he refused, suspend consideration of the claim pursuant to statute. Id.
Tort Reform — Patient Privilege Waived by Filing Workers' Compensation Claim
The 1987 Tort Reform Act, effective on January 5, 1988, modified various tort principles in Ohio, including the physician-patient privilege. In the amended version of R.C. 2317.02, the General Assembly expanded the ways by which the physician-patient privilege could be waived. In addition to an express waiver by the patient, the filing of a workers' compensation claim now constitutes a compulsory waiver of the physician-patient privilege. R.C.2317.02(B)(1) provides, in pertinent part,
 The testimonial privilege established under this division does not apply, and a physician or dentist may testify or may be compelled to testify, in any of the following circumstances:
 (a) In any civil action, in accordance with the discovery provisions of the Rules of Civil Procedure in connection with a civil action, or in connection with a claim under Chapter 4123 of the Revised Code, under any of the following circumstances:
* * *
 (iii) If * * * a claim under Chapter 4123. of the Revised Code is filed by the patient, the personal representative of the estate of the patient if deceased, or the patient's guardian or other legal representative.
The 1987 amendments also modified the substantive law of workers' compensation. See Fulton, Ohio Workers' Compensation Law (2 Ed. 1998) 98, Section 4.9. Now R.C. 4123.651(B) requires a claimant to execute a release upon request by the employer to obtain medical information, records, and reports relevant to issues raised in the administration of the claim. See, also, Ohio Adm. Code 4121-3-09(A)(3) and 4121-17-30(L). A claimant's refusal to submit to a medical examination or to sign a release for records involving "an issue pertinent to the condition alleged in the claim" suspends the claim pending compliance. See R.C. 4123.53(C).
Therefore, we hold that, in light of Ivy's execution of the express waiver of her patient-physician privilege on the face of the C-3 form, which permitted the release to her employer of "information of any kind which may be used to render a decision in my claim," and her filing and prosecution of a workers' compensation claim, there was no genuine issue of material fact remaining to be litigated on whether she had authorized her employer to seek and Eiler to release nonpublic medical information pertinent to her claim.
The Bureau's Duty to Gather Facts and Investigate
The only remaining issue is whether Eiler's release of information regarding treatment for depression involved "an issue pertinent to the condition alleged in the claim," and who should make that determination.
A workers' compensation award is the exclusive remedy for claims arising out of compensable injuries and diseases. See Section 35, Article II, Ohio Constitution; see, also, R.C.4123.74; see, generally Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, 109-112, 522 N.E.2d 489,498-500 (discussing the public-policy trade-offs inherent in the workers' compensation system). R.C. 4123.54 provides that every employee who contracts an occupational disease is entitled to receive medical services authorized by R.C. Chapter 4123. Once a claimant has filed a timely claim application, see State ex rel. Carr v. Indus.Comm. (1935), 130 Ohio St. 185, 198 N.E. 480, the administrator of the bureau of workers' compensation shall pay such amounts from the state insurance fund "as he deems proper." R.C.4123.66.
To aid in determining the right to receive payment for medical services and the proper amount of payment, the General Assembly has imposed an affirmative duty on the bureau of workers' compensation to investigate and gather "the facts concerning an injury or occupational disease and ascertain such facts in whatever manner is most appropriate." R.C. 4123.511. To accomplish this goal, the bureau "may obtain statements of the employee, employer, attending physician, and witnesses in whatever manner is most appropriate." Id.; see, also, R.C. 4123.651. When it is deemed of assistance in determining a claim, the bureau may even compel a claimant to submit to a medical examination. See. R.C. 4123.53.
Thus, the General Assembly has delegated to the bureau, and not to attending physicians, the duty of collecting and evaluating medical information about a claimant to determine if medical payments are proper. While an attending physician may well have an accurate and informed opinion about whether information on a medical condition is "pertinent to the condition alleged in the claim" or whether it could be "used to render a decision in [a] claim," and should exercise her judgment in limiting disclosure of personal information, under the workers' compensation system, as currently implemented by the General Assembly, the bureau determines what information is pertinent. Ultimately, the claimant must decide whether participation in the state insurance fund merits potential disclosure of personal medical information.
It was for the bureau to decide what importance to attach to the nonpublic medical information disclosed by Eiler — that she was treating Ivy for depression at the same time that she was diagnosing and treating carpal tunnel syndrome. Thus, no genuine issue of material fact remained to be resolved over whether Eiler's decision to release the three pages of medical notes constituted a breach of any duty to maintain confidential any non-pertinent information. That decision rested with the bureau, not with Eiler. We note that Eiler did, in fact, choose not to release notes she took in May 1996 that related solely to treatment for depression. Moreover, nowhere in the record is it claimed that Ivy was discriminated against in employment because of the release of the information about her depression. The record reveals that only the two or three members of Michelman's processing office had access to the files.
We do not hold, because it is not necessary to the resolution of the issues presented in this case, that there is no set of facts under which a claimant could maintain a tort action against her physician for an ostensibly authorized release of portions of a medical record whose importance to a claim is so attenuated as to constitute an unauthorized release.
But here, as no genuine issue of material fact remained to preclude judgment as a matter of law in favor of Eiler, the trial court did not err in entering summary judgment, and the assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
___________________________ Gorman, Judge
Sundermann and Winkler, JJ., concur.
[1] The physician-patient privilege did not exist at common law and is wholly a creation of the legislature. See Ohio State Med.Bd. v. Miller (1989), 44 Ohio St.3d 136, 140, 541 N.E.2d 602,605.