OPINION.
Plaintiff-Appellant Kenker Box Company appeals from the trial court's entry of summary judgment in favor of defendants-appellees, the Riemeier Lumber Company, Gary Mitchell Layne, and Thomas Kirkbride, on its claims for breach of contact, misappropriation of trade secrets, interference with business relationships, unfair competition, civil conspiracy, and punitive damages. Kenker alleged that, in 1998, Layne, the longtime manager of Kenker's wooden-pallet production, had disclosed confidential business information to Riemeier, Kenker's lumber supplier, and then left Kenker to develop a pallet-production operation at Riemeier. When Layne moved to Riemeier, Kenker's major client, accounting for half its sales, also moved its business to Riemeier. The gravamen of Kenker's complaint was that Layne had misappropriated its confidential business information and used it, with Riemeier, for their own economic gain. As genuine issues of material fact remain as to whether the information Layne relayed to Riemeier had independent economic value, the trial court erred in granting summary judgment on Kenker's misappropriation-of-trade-secret claim.
 Facts
Kenker is a twenty-five-employee enterprise manufacturing wooden pallets. Its president, Jay Rowe, has not been involved in its day-to-day operations. Layne, a Kenker employee since 1986, was vice president for operations with responsibilities for personnel management, supervision of pallet production, and account management and development. Despite his supervisory status, Layne remained an at-will employee with no contract of employment. He never entered into a non-disclosure or non-competition agreement with Kenker, though he was responsible for briefing new employees about handling confidential company information.
In 1998, Aristech Acrylics was Kenker's major customer. Its purchase of approximately $1.4 million of pallets represented half of Kenker's annual sales. Layne's father was the chief executive officer of Aristech. Layne had obtained the Aristech account for Kenker. Aristech placed orders for pallets on an as-needed basis. There was no ongoing contract or other commitment by Aristech for the exclusive purchase of pallets from Kenker.
Riemeier sells industrial and commercial lumber and construction materials. In 1998, Riemeier was the major supplier of lumber to Kenker and was well aware of the cost of materials involved in the production of pallets. Riemeier also manufactured pallets and skids, though on a much smaller scale than Kenker. Its 1997 pallet sales were about $.25 million.
In response to decisions by Rowe about Kenker's future activities, Layne approached Riemeier in late 1997 about employment opportunities. Layne and his father's account presented an opportunity for Riemeier to expand its pallet operations. In February 1998, Layne met with a Riemeier vice president. Without Kenker's knowledge or permission, Layne delivered a written analysis of Kenker's account with Aristech, including previous years' sales figures, Aristech's payment history, material costs and manpower needs for the account, Kenker's overhead, and its profit margin on the account.
After reviewing the information supplied by Layne, Riemeier prepared its own business plan and proceeded with the expansion. In March 1998, Layne left Kenker and joined Riemeier as manager of its custom pallet and box division. On the day before he left Kenker's employment, Layne procured Kenker's pricing information from a locked file, copied it, and relayed it to Riemeier. One week later, Riemeier underbid Kenker for the Aristech account. When Layne left Kenker, Aristech took its business to Riemeier. Aristech's purchasing agent stated that when Layne went to Riemeier, Aristech went too. Kenker's offer to match Riemeier's lower price did not persuade Aristech to return.
Kirkbride was an employee of Kenker for three and one-half months. One month after Layne's departure, Kirkbride, learning of Riemeier's new pallet operation from a client, joined Layne at Riemeier as an operations manager with a $3,000-per-year increase in salary. The only Kenker information that Kirkbride took with him was data used to schedule and track pallet production, information that Kenker did not record for its own use.
After Layne's departure, Kenker brought this suit, alleging, interalia, that Riemeier had used the information Layne copied and disclosed without permission to make the decision to expand its pallet operations, and to undercut Kenker's prices to Aristech by six percent on thirty-one products. Following a lengthy pretrial period, the trial court granted the appellees' motions for summary judgment on all Kenker's claims, save its allegations of breach of fiduciary duty raised against Kirkbride and Layne.
Upon a motion for reconsideration, the trial court reiterated its prior rulings on summary judgment. The trial court also granted the appellees' motions to strike the affidavits of Kenker's owner and of two others who sought to give expert testimony that the information Layne took from Kenker was trade-secret information. Kenker has appealed from these two judgments under the number C-990803.
Layne has also filed a notice of appeal, under the number C-990824, from the trial court's entries denying his motion for summary judgment on Kenker's claim for breach of fiduciary duty. On February 9, 2000, all parties to the appeal filed a stipulation in the trial court that, interalia, dismissed Kenker's breach-of-fiduciary claim against Layne and Kirkbride. That entry is contained in the record certified to this court for review pursuant to App.R. 9. While no party has sought its dismissal, this court sua sponte dismisses appeal No. C-990824.
 Summary-Judgment Standard
The function of summary judgment is to determine from the evidentiary materials if triable factual issues exist. A motion for summary judgment shall be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. See Civ.R. 56(C).
The moving party "bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresherv. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. When, as here, the moving party discharges that burden, the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(E) showing that a triable issue of fact exists. Id. at 293, 662 N.E.2d at 274; see Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801.
The mere existence of factual disputes between the parties does not necessarily preclude summary judgment. Only disputes over genuine factual matters that affect the outcome of the suit will properly preclude summary judgment. See Gross v. Western-Southern Life Ins. Co. (1993),85 Ohio App.3d 662, 666-667, 621 N.E.2d 412, 415, citing Anderson v.Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510. Thus, we will not disturb the entry of summary judgment below unless Kenker can, by evidence manifested in the record, identify factual disputes that affect the essential elements of its claims, including that for misappropriation of trade secrets.
 Trade-Secret Claims
The misappropriation of trade secrets is a tort recognized in Ohio. See R.C. 1333.61. The trade-secret statute seeks to maintain commercial ethics, to encourage invention, and to protect an employer's investments and proprietary information. See Levine v. Beckman (1988),48 Ohio App.3d 24, 28, 548 N.E.2d 267, 271. Appellees moved for summary judgment on Kenker's misappropriation claim on the basis that the information that Layne had conveyed to CRiemeier did not meet the statutory definition of a trade secret. Therefore, any use of that information to develop Riemeier's pallet-production operation was proper. They alleged, and the trial court agreed, that the information Layne had provided to Riemeier was generally known in the business community and had no independent economic value, thus failing to meet the statutory requirements for trade-secret protection. But the trial court also noted that Kenker had attempted to keep the information confidential.
While the businesses involved here manufacture wooden pallets, the protection for trade secrets is not limited to scientific or technical information. , "trade secret" means information "including * * * any business information or plans, financial information, or listing of names, addresses, or telephone numbers." A company's determination of its costs, overhead, and volume of sales, and particularly its calculation of profit margins on customers' purchases may be the kind of information that the trade-secret statute seeks to protect. See, e.g.,State ex rel. Besser v. Ohio State Univ. (2000), 89 Ohio St.3d 396, 402,732 N.E.2d 373, 380; see, also, Perram Elec., Inc. v. Jarvis (Dec. 22, 1999), Medina App. No. 2906-M, unreported.
To receive trade-secret protection, the information must also "derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.C. 1333.61(D).
As the parties note, where an employee is alleged to have used the trade secrets of his former employer in a new and competing endeavor, there is a tension between the "rights of an employer to enjoy the use of [trade secrets] developed through its own initiative and investment" and "the right of employees to earn a livelihood by utilizing their personal skill, knowledge and experience." Valco Cincinnati, Inc. v. N DMachining Service, Inc. (1986), 24 Ohio St.3d 41, 46, 492 N.E.2d 814, 818
(citations omitted).
The Supreme Court of Ohio, acknowledging the need to balance these conflicting interests — a function inimical to summary judgment — has emphasized that the determination of whether information qualifies as a trade secret is ordinarily "a question of fact to be determined by the trier of fact upon the greater weight of the evidence."Fred Siegel Co. L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171,707 N.E.2d 853, paragraph six of the syllabus, affirming ValcoCincinnati, Inc. v. N D Machining Serv., Inc. Therefore, the resolution of this assignment of error depends upon whether there are any genuine issues of material fact to be resolved by a trier of fact surrounding the classification of the information given to Riemeier by Layne as a trade secret under.
Appellees contend that the information Layne provided was readily known to Riemeier as a major lumber supplier to Kenker and thus was not a trade secret. They also assert that Kenker did not take sufficient steps to maintain its secrecy.
A review of the record reveals evidence that Kenker made reasonable efforts to guard the profit-margin information by limiting its distribution to a small number of employees. Layne's own testimony indicated that much of the information that he had relayed was properly known only to Layne, Rowe, and one administrative/secretarial employee at Kenker. Moreover, Layne himself informed new employees of the value and confidentiality of some company information.
Kenker also adduced evidence that Riemeier used the compiled information supplied by Layne to develop a business plan for its new pallet division, to underbid Kenker, and thus to derive value from it. As this court has noted in Procter Gamble Co. v. Stoneham (Sept. 29, 2000), Hamilton App. No. C-990859), unreported, it is often the effort and expense employed in the analysis and interpretation of well-known data that represents independent economic value and thus may constitute a trade secret.
Construing the evidence in a light most favorable of Kenker, we hold that there is a genuine issue of material fact as to whether reasonable steps were taken to maintain the secrecy of the information delivered to Riemeier. There are also genuine issues remaining as to whether the information had independent economic value from not being generally known to a competitor like Riemeier, and from not being readily ascertainable by proper means, and was thus a trade secret. In light of the Ohio Supreme Court's admonition in Fred Siegel Co. L.P.A. v. Arter Hadden, and the dictates of Civ.R. 56, summary judgment in favor of Riemeier and Layne on this claim was inappropriate. Kenker's first assignment of error is sustained as to appellees Riemeier and Layne. The assignment of error is overruled as to appellee Kirkbride.
 Tortious-Interference Claims
Kenker's second assignment of error, in which it claims that the trial court erred in granting summary judgment on its claims for tortious interference in its business relationship with Aristech, is overruled. There is no evidence of record that Kenker had a contract with Aristech for exclusive dealing, or a legally cognizable expectation that Aristech would continue to purchase pallets from Kenker. Aristech was free to entertain and to accept competitive bids. See Fred Siegel Co. L.P.A. v.Arter Hadden, paragraph four of the syllabus; see, also, A B AbellElevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council
(1995), 73 Ohio St.3d 1, 651 N.E.2d 1283. Similarly, with no evidence of intimidation or coercion in the record, Kenker's at-will employees were free to leave and enter the employ of Riemeier. See Mers v. DispatchPrinting Co. (1985), 19 Ohio St.3d 100, 483 N.E.2d 150, paragraph one of the syllabus; see, also, Miller Bros. Excavating, Inc. v. StoneExcavating, Inc. (Jan. 16, 1998), Greene App. No. 97-CA-69, unreported.
 Conspiracy and Punitive-Damage Claims
In two interrelated assignments of error, Kenker asserts that the trial court erred in granting summary judgment on its claims that Layne and Riemeier conspired to misappropriate its trade secrets and thus were subject to punitive damages. To prevail on claims of civil conspiracy and punitive damages, Kenker would have to adduce evidence of malice on the part of Layne or Riemeier. See Kenty v. Transamerica Premium Ins.Co. (1995), 72 Ohio St.3d 415, 650 N.E.2d 863; Preston v. Murty (1987),32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. The third and fourth assignments of error are overruled, as the trial court correctly determined that while Kenker's business and personnel decisions indeed may have caused consternation among its employees, there was no evidence of the retaliatory ill will necessary for a showing of malice — an essential element of Kenker's claims. See Dresher v. Burt,75 Ohio St.3d at 293, 662 N.E.2d at 274; see, e.g., Meyers v. Hot Bagels Factory, Inc.
(1999), 131 Ohio App.3d 82, 97-98, 721 N.E.2d 1068, 1078-1079.
 The Motion for Reconsideration
In its final assignment of error, Kenker claims the trial court erred in denying its motion for reconsideration of the August 25, 1999, opinion and entry on all pending motions. We note that there is no provision in the civil rules for a motion for reconsideration. Contrary to Kenker's assertion, the trial court carefully considered the evidence presented, in conformity with Civ.R. 56. The trial court did not err in denying the motion for reconsideration, except as to Kenker's claim for misappropriation of trade secrets as addressed in the resolution of the first assignment of error. In all other respects the fifth assignment of error is overruled.
Therefore, the trial court's entries of judgment, in the appeal numbered C-990803, are reversed in part, and this case is remanded to the trial court for further proceedings on Kenker's claims of misappropriation of trade secrets raised against Riemeier and Layne only. The trial court's entries of judgment are affirmed as to all claims raised against Kirkbride. Layne's appeal, numbered C-990824, from the trial court's entries denying his motion for summary judgment on Kenker's claim for breach of fiduciary duty is dismissed.
Painter and Sundermann, JJ., concur.