OPINION.
Plaintiffs-appellants Scottie Oliver Croft and his former wife, Barbara Croft, appeal from the summary judgment granted by the trial court in favor of his employer, defendant-appellee Fluor Daniel Engineering, Inc., upon their claims for damages caused by Fluor Daniel's intentional tort. Upon the evidentiary material in the record, viewed in a light most favorable to the Crofts, we hold that genuine issues of material fact remain as to whether Fluor Daniel knew with substantial certainty that an injury would result from Croft's work on a live steam line.
 FACTS
This appeal arose from an October 10, 1994, incident at the Proctor 
Gamble Company's Ivorydale production facility in Cincinnati. The soap production unit of the Ivorydale facility was shut down infrequently to complete maintenance and renovation tasks that could not be completed when the plant was operating. Croft, a journeyman certified pipe fitter, was working for Fluor Daniel under the supervision of Brian Bauman, the Fluor Daniel general foreman at the Ivorydale facility. Bauman instructed Croft and his co-worker, Hunt, to reroute the one-inch steam line that ran from an eight-inch steam line. The eight-inch main supply line provided steam, under 150 pounds per square inch ("psi") of pressure, to the plant for soap production. This job had been scheduled to be performed during the 1994 shutdown period, but, due to time constraints and other repairs, was not attempted until the steam line was operating and fully pressurized.
As part of this task, Hunt and Croft had to disconnect or "break" several unions in the one-inch line. Each union consisted of a coupling, held together with bolts, connecting two lengths of pipe. The one-inch condensation line branched off of an eight-inch "drip leg" affixed to the eight-inch main steam line. A single valve on the drip leg protected Croft and Hunt from the 150-psi steam. Bauman told Croft and Hunt to be careful because of the single-valve protection.
The task proceeded smoothly until Croft and Hunt reached the last union. Both were harnessed to a lift basket some feet above the shop floor. Between the last union and the eight-inch drip leg were a six-to-eight-inch nipple (a pipe coupling consisting of a short piece of threaded tubing), a ninety-degree elbow, another nipple, the single locked-shut valve, and yet another nipple. Without a permit for "hot work," i.e., permission to use a torch to sever the union, Croft and Hunt struggled with large pipe wrenches to break the last union. Before the union bolts loosened, the nipple located between the pressurized drip leg and the single valve snapped. Pressurized steam erupted from the drip leg and caused a loud blast. Neither worker was struck by the steam jet. Hunt was able to jump to safety. But Croft's safety harness was tied too tightly, and he could not leave the lift basket. Croft suffered injuries including constant ringing in the ears, difficulty with balance, and nausea. He underwent surgery to release a fluid buildup behind his eardrums. He was unable to return to work as a pipe fitter.
Fluor Daniel moved for summary judgment, asserting, in part, that the Crofts had failed to present evidence sufficient to establish intent to cause harm to its employee according to the "substantial certainty" test set forth in Fyffe v. Jeno's (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraphs one and two of the syllabus. On May 31, 2001, the trial court, without elaboration, granted Fluor Daniel's motion for summary judgment.
Summary-Judgment Standard
The function of summary judgment is to determine from the evidentiary materials if triable factual issues exist. A motion for summary judgment shall be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. See Civ.R. 56(C).
The moving party "bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v.Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107, 662 N.E.2d 264. When, as here, the moving party discharges that burden, the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth "specific facts" by the means listed in Civ.R. 56(E) showing that a triable issue of fact exists. Id. at 293, 662 N.E.2d 264; see Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798.
While only disputes over genuine factual matters that affect the outcome of the suit will properly preclude summary judgment, trial courts should award summary judgment with caution, being careful to resolve doubts and to construe the evidence in favor of the nonmoving party. SeeWelco Industries, Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191, 617 N.E.2d 1129; see, also, Gross v. Western-Southern LifeIns. Co. (1993), 85 Ohio App.3d 662, 667, 621 N.E.2d 412, citing Andersonv. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248, 106 S.Ct. 2505. Here, we will not disturb the entry of summary judgment below unless the Crofts can, by evidence manifested in the record, identify factual disputes that affect the essential elements of the claim of intentional tort.
Intentional Tort
In order to withstand a properly supported summary-judgment motion in an employer-intentional-tort action, an employee must set forth specific facts, by direct or circumstantial evidence, to raise a genuine issue of fact that the employer committed an intentional tort. See Hannah v.Dayton Power Light Co., 82 Ohio St.3d 482, 485, 1998-Ohio-408,696 N.E.2d 1044, citing Van Fossen v. Babcock Wilcox (1988),36 Ohio St.3d 100, 522 N.E.2d 489, paragraph seven of the syllabus. In an employment context, an intentional tort is "an act committed with the intent to injure another, or committed with the belief that such injury was substantially certain to occur." Hannah v. Dayton Power Light Co.,82 Ohio St.3d at 487, 1998-Ohio-408, 696 N.E.2d 1044, quoting Jones v.VIP Dev. Co. (1984), 15 Ohio St.3d 90, 472 N.E.2d 1046, paragraph one of the syllabus.
A cognizable claim of intentional tort assumes that an employee's injury is substantially certain to result from the employer's act. The Ohio Supreme Court has held that the requisite showing of the employer's intent includes the following: (1) knowledge of a dangerous condition within its business operation; (2) knowledge that if the employee is subjected by employment to the dangerous condition, harm will be a substantial certainty; and (3) despite knowledge of these circumstances the employer requires the employee to perform the dangerous task. SeeFyffe v. Jeno's (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. The application of these standards is a fact-intensive process, see Sanek v. Duracote Corp. (1989), 43 Ohio St.3d 169, 172,539 N.E.2d 1114, in which "one is left with the distinct impression that each case turns on its own facts." Blanton v. Internatl. Minerals Chem. Corp. (1997), 125 Ohio App.3d 22, 26, 707 N.E.2d 960.
In Gibson v. Drainage Products, Inc., 95 Ohio St.3d 171,2002-Ohio-2008, 766 N.E.2d 982, at ¶ 23-24, decided after this appeal was submitted for consideration, the Ohio Supreme Court reiterated the rule it had established in Hannah v. Dayton Power Light Co.,82 Ohio St.3d 482, 487, 1998-Ohio-408, 696 N.E.2d 1044. For purposes of surviving a motion for summary judgment, "it is not necessary for an employee to show that the employer expressly ordered the employee to engage in the dangerous task. Instead, the third element of the Fyffe
test can be satisfied by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in that dangerous task." Id.
The first element of Fyffe requires the employee to establish that the employer possessed knowledge of the dangerous procedure or condition within its operations. Here, a genuine issue of material fact remains regarding this element. There is no dispute that working on a live 150-psi steam line while harnessed to a lift basket above the shop floor was a dangerous procedure. The resolution of this appeal ultimately depends upon whether genuine issues of material fact remain regarding (1) whether Fluor Daniel possessed knowledge that injury to Croft was a substantial certainty if he was subjected to the dangerous procedure; and (2) whether Fluor Daniel, armed with that knowledge, required Croft to continue to perform the dangerous task. It is clear from the record that there exist genuine issues of material fact as to these prongs of theFyffe test.
Croft stated in his deposition that he had never seen anyone work that closely to a live main steam line. Hunt agreed, noting that he had never worked on a live steam line and knew of no one who had. Fluor Daniel knew of the dangerousness of the work, having originally scheduled the work to be performed when the plant was shut down. It failed to ensure that the work was performed as scheduled. When the steam lines were pressurized, Fluor Daniel pressed ahead and had the work performed. It failed to obtain or to insist that Croft and Hunt obtain a "hot work" permit — a frequent workplace occurrence — that would have allowed the use of torches to cut out the unions. Instead, Croft and Hunt employed pipe wrenches to force open the bolts holding the unions together. Evidence was adduced from the Crofts' expert witness that some structural reinforcement was required between the valve and the steam line to support the lengths of pipe under the torque from Croft and Hunt's wrenches.
Construing the evidence in a light most favorable to the Crofts, we hold that there are genuine issues of material fact as to whether Fluor Daniel knew of the dangerousness of working on live steam lines, whether it possessed knowledge that injury to Croft was a substantial certainty if he was subjected to the dangerous procedure, and whether, armed with that knowledge, Fluor Daniel required Croft to continue to perform the dangerous task. In light of the Ohio Supreme Court's decision in Gibsonv. Drainage Products, Inc., and the dictates of Civ.R. 56, summary judgment in favor of Fluor Daniel on this claim was inappropriate. The Crofts' assignment of error is sustained.
Therefore, the summary judgment entered by the trial court for Fluor Daniel is reversed. This cause is remanded to the trial court for further proceedings consistent with law and this Opinion.
Judgment reversed and cause remanded.
Doan, P.J., and Hildebrandt, J., concur.