[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} Defendant-appellant Systems Alternatives International, Inc. ("SAI"), contests the entry of summary judgment in favor of plaintiffs-appellees Carolyn A. Trainor and Ellen H. Alaire on their claims seeking the payment of severance benefits from SAI. Trainor and Alarie had accepted SAI's offer of employment with the promise that the severance benefits of their previous employer would transfer to their employment with SAI. Both Trainor and Alarie were terminated by SAI due to lack of work, and SAI paid severance benefits only for their time with SAI.
 {¶ 3} Summary judgment is proper when no genuine issue of material fact remains to be litigated, and the moving party is entitled to judgment as a matter of law. See Civ.R. 56(C). When the parties moving for summary judgment discharge their initial burden of identifying the absence of a genuine issue of material fact on the essential elements of the their claims, the nonmoving party has the reciprocal burden of producing evidence on the issues for which it bears the burden of production at trial. See Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264.
 {¶ 4} Because summary judgment presents only questions of law, an appellate court's review of the granting of a motion for summary judgment is de novo. See Polen v. Baker, 92 Ohio St.3d 563, 564-565,2001-Ohio-1286, 752 N.E.2d 258. The substantive law governing Trainor and Alarie's claims identifies the factual disputes that are material and thus could preclude summary judgment. See Gross v. Western-Southern LifeIns. Co. (1993), 85 Ohio App.3d 662, 666-667, 621 N.E.2d 412, citingAnderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248,106 S.Ct. 2505.
 {¶ 5} Severance pay is a form of deferred compensation for continued service, and where employees accept an employer's offer for the payment of severance benefits and furnish consideration by starting to work, an enforceable unilateral contract for payment of the severance benefits is formed. See Helle v. Landmark, Inc. (1984), 15 Ohio App.3d 1,10-11, 472 N.E.2d 765; see, also, Bolling v. Clevepak Corp. (1984),20 Ohio App.3d 113, 484 N.E.2d 1367.
 {¶ 6} In three interrelated assignments of error, SAI contends that the trial court erred in entering summary judgment in favor of Trainor and Alarie, as genuine issues of material fact remained to be litigated over whether SAI made "specific promise[s] of continued employment" sufficient "to enforce an alleged promise of future benefits," whether a contract of employment existed, what DJJ's severance policy was, and whether Trainor and Alarie had inquired about the specifics of SAI's severance program before accepting employment. We will not disturb the entry of summary judgment below unless SAI can, by evidence manifested in the record, identify factual disputes that affect the essential elements of the claims at issue.
 {¶ 7} Both Trainor and Alarie began employment with the David J. Joseph Company ("DJJ") in the 1980s. In 1999, DJJ entered into a joint venture with SAI. Later that year, SAI opened a Cincinnati office and offered employment there to Trainor, Alarie, and other DJJ employees. SAI's President, John Underwood, in a letter to DJJ employees, offered employment with SAI, informing them that "SAI will provide a comprehensive benefit package that will be comparable to that currently provided by DJJ. * * * If you have any questions about your employment with [SAI] please feel free to ask Jay Martz." SAI's Vice President, Jay Martz, informed Trainor and Alarie that when they transferred their employment from DJJ to SAI, "[a]ll benefits and tenure would betransferred from DJJ * * * [to] employees considering transferring to SAI," and that "the benefits they would receive at SAI would be as good as the benefits they enjoyed at DJJ." (Emphasis added.)
 {¶ 8} As a result of these solicitations, Trainor and Alarie accepted employment with SAI in 1999. In June 2000, SAI terminated the employment of Trainor and Alarie due to a lack of work at the company. They received severance pay equal to only two weeks of the compensation they were then earning: approximately $2,100 for Trainor and $2,300 for Alarie. DJJ's senior vice president of human resources stated that, at the time of their transfer of employment, DJJ provided employees like Trainor and Alarie, who were involuntarily terminated for lack of work, with two weeks of severance pay for the first year of employment and one week of pay for each additional year of their employment with DJJ. If DJJ's benefits had transferred to their employment with SAI, Trainor would have received $18,307.69 in severance pay, and Alarie would have received $15,548.08.
 {¶ 9} Each of SAI's assignments of error is overruled. Trainor and Alarie do not contend that they were wrongfully terminated, as SAI argues; rather they contend that SAI breached its contractual obligation under Helle to pay the transferred severance benefits. SAI denies it made an offer to transfer benefits from DJJ. The evidence is conclusive that it did. Trainor and Alarie were entitled to summary judgment in their favor. See Helle v. Landmark, Inc., 15 Ohio App.3d at 12-13,472 N.E.2d 765.
 {¶ 10} The judgment of the trial court is affirmed.
 {¶ 11} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Gorman and Winkler, JJ.