DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Keith Trombley, appeals from a judgment by the Lucas County Court of Common Pleas granting summary judgment in favor of appellees, Calamunci, Joelson, Manore, Farah, Silvers, L.L.P., Anthony Calamunci, Esq., and Asad S. Farah, Esq. For the reasons that follow, we affirm.
 {¶ 2} On April 24, 2003, Trombley filed suit against appellees, asserting claims for breach of contract and legal malpractice arising from appellees' representation of Trombley in two civil cases, respectively captioned Trombley v. Reynolds, Toledo M.C. No. CVE-00-13072, and Wesson v. Trombley, Lucas C.P. No. CI02001-4205.
 {¶ 3} The facts of the Reynolds litigation are as follows. On March 1, 2000, Trombley entered into a business property lease with Nancy Reynolds. Under the terms of the lease, Trombley was to lease certain commercial properties, and the businesses located on those properties, for a period of ten years, at a rate of $10,000 a month. At the end of the ten-year period, Trombley was to have an option to purchase the properties and businesses for the sum of $1. Trombley signed the agreement and gave Reynolds $10,000.
 {¶ 4} Just days after signing the agreement, Trombley discovered that the leased property was partly owned by another individual, one Larry Willard. Trombley told Reynolds that unless Willard's name was added to the lease, he wanted the deal rescinded and his $10,000 deposit returned. When Reynolds refused, Trombley hired attorney Mark Mockensturm.
 {¶ 5} On August 3, 2000, Mockensturm filed a complaint against Reynolds on Trombley's behalf in Toledo Municipal Court. In the complaint, Trombley alleged that Reynolds fraudulently induced him to enter into the lease, and sought damages in the amount of $10,000. Reynolds filed a counterclaim, wherein she alleged that Trombley breached the terms of the lease, and demanded judgment for the entire value of the lease, in the amount of $1,200,000.
 {¶ 6} On April 23, 2001, attorney Teresa M. Dewey Bacho filed a motion to substitute herself as counsel of record for Trombley in place of attorney Mockensturm. Less than four months later, she was granted leave to withdraw as counsel. According to Trombley, he requested her withdrawal as a result of a disagreement they had over evidence.
 {¶ 7} On August 10, 2001, Reynolds filed a motion for summary judgment requesting that the court dismiss Trombley's fraud claim and grant summary judgment in her favor on the breach of contract claim.
 {¶ 8} On August 28, 2001, attorney Stevin Groth, an attorney with the appellee law firm, filed a motion for extension of time to respond to Reynold's motion for summary judgment and to substitute himself as counsel of record for Trombley. However, the next day, on August 29, 2001, the court granted Reynold's motion for summary judgment.
 {¶ 9} On August 31, 2001, the court denied Trombley's motion for extension of time, dismissed Trombley's complaint, granted judgment on Reynold's counterclaim, and set a hearing to determine damages on October 22, 2001.
 {¶ 10} On October 11, 2001, Groth filed on behalf of Trombley a motion for relief under Civ.R. 60(B) and a motion in opposition to Reynold's motion for summary judgment.
 {¶ 11} Because neither Trombley nor attorney Groth appeared at court on October 22, 2001, the court reset the assessment of damages hearing, first for December 10, 2001, and, ultimately, for January 7, 2002.
 {¶ 12} Groth left the appellee law firm in December 2001. Although Groth offered to continue his representation of Trombley, Trombley elected to stay with the appellee law firm, and appellee attorney Calamunci took over Trombley's case.
 {¶ 13} On January 7, 2002, the court held the hearing for assessment of damages on Reynolds's counterclaim. Neither Trombley nor Calamunci was present at the hearing. According to Trombley, Calamunci had assured him that he, Trombley, did not have to be at the hearing.
 {¶ 14} In a judgment entry dated February 7, 2002, the court indicated that it had reviewed motions for summary judgment filed by both Reynolds and Trombley, and found no evidence to support Trombley's position. Finding that Trombley was in breach of the lease agreement from March 2000 through September 2000, the court awarded judgment to Reynolds in the amount of $70,000 (the total amount due for seven months rent at a rate of $10,000 per month), less Trombley's initial $10,000 payment. Thus, the total additional award against Trombley was in the amount of $60,000.
 {¶ 15} Trombley did not become aware of this judgment until May 2002, when he received a telephone call from Nancy Reynolds asking him what he intended to do about the judgment. According to Trombley, he then contacted Calamunci, who told him it was too late for him to do anything to help.
 {¶ 16} Trombley and Reynolds subsequently met and negotiated a settlement in the amount of $7,253. On July 9, 2002, Reynolds filed a satisfaction of judgment with the court.
 {¶ 17} The facts of the Wesson litigation are as follows. On September 13, 1996, Trombley purchased from the Wesson Company ("Wesson") certain property located at 515 Wamba Avenue, Toledo, Ohio. In exchange for the property, Trombley executed a promissory note in which he agreed to pay Wesson $81,000. Payment was to be made under specific terms, starting with 48 consecutive payments of $870.43, with interest at a rate of ten percent, beginning on November 1, 1996. The remaining balance was due on October 1, 2000. To secure payment of the promissory note, Trombley executed and delivered to Wesson a mortgage deed on the purchased property.
 {¶ 18} When the remaining balance became due on the property, Trombley was unable to pay. As a result, on September 7, 2001, Wesson filed an action to foreclose on the property.
 {¶ 19} As in the Reynolds litigation, Trombley's representation was handled first by attorney Groth, and when Groth left the firm, by attorney Calamunci.
 {¶ 20} The Wesson matter was called for trial on April 15, 2002. According to Trombley, no one from the appellee law firm met with him to prepare him for the trial. On the day of the trial, appellee attorney Asad Farah, also from the appellee law firm, appeared to represent Trombley. Trombley had never met or spoken to Farah prior to that date. Before trial, attorney Farah advised Trombley to agree to a judgment entry of $84,000 and to sign the Wamba Street property over to Wesson. Mr. Trombley refused.
 {¶ 21} According to Trombley, Farah requested the court's leave to withdraw as counsel, but the court refused his request and stated that the matter was going forward for trial that day. The matter did not go to trial, however. Instead, Trombley negotiated a settlement on his own with the Wesson attorney. Under the terms of the agreement, Trombley agreed to sign the property over to Wesson and to sign a consent judgment in the amount of $10,000.
 {¶ 22} In his complaint against appellees, Trombley alleged claims for legal malpractice arising from three separate occurrences involving three separate attorneys, specifically: (1) attorney Groth's failure to appear at a hearing in the Reynolds matter; (2) appellee attorney Calamunci's failure to appear at the damages hearing in the Reynolds matter; and (3) appellee attorney Farah's alleged unpreparedness for trial in the Wesson matter.
 {¶ 23} Appellees moved the trial court for summary judgment on appellant's complaint on the grounds that: (1) Trombley's claim of legal malpractice against the appellee firm relating to attorney Groth's conduct was barred by the statute of limitations; (2) Trombley could not establish the elements of his claim for legal malpractice against attorney Calamunci in connection with his failure to attend a damages hearing; and (3) the statute of limitations barred Trombley's claim of legal malpractice arising from attorney Farah's alleged unpreparedness for trial.
 {¶ 24} The trial court granted appellees' motion in its entirety. It is from that order that appellant now appeals, asserting the following assignments of error:
 {¶ 25} I. "As to the Reynolds matter, the trial court erred in finding that Plaintiff/Appellant was required to show his damages `with certainty' in its response to Defendants/Appellees' Motion for Summary Judgment and that Plaintiff/Appellant's damages were `mere speculation' as a matter of law."
 {¶ 26} II. "The trial court erred in finding that Plaintiff/Appellant failed to meet the statute of limitations in the Wesson matter."
 {¶ 27} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 28} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 29} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Rybergv. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citingTokles Son, Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621,629.
 {¶ 30} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the nonmoving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 31} The elements of a claim for legal malpractice are: "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus.
 {¶ 32} Trombley argues in his first assignment of error that it was error for the trial court to have found as a matter of law that he failed to establish the element of damages with respect to his claim against attorney Calamunci for failing to appear at the damages hearing in the Reynolds matter.
 {¶ 33} In a legal malpractice action, "it is axiomatic that compensatory damages must be shown with certainty, and damages which are merely speculative will not give rise to recovery. Endicott v. Johrendt
(June 22, 2000), 10th Dist. No. 99AP-935. "The evidence must establish a calculable financial loss because one of the essential elements of a legal malpractice claim is a causal connection between the conduct complained of and resulting damages or loss. Nu-Trend Homes, Inc. v. LawOffices of DeLibera, Lyons Bibbo, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, at ¶ 42, citing Motz v. Jackson (June 29, 2001), 1st Dist. No. C-990644. Where a party asserts only a nonspecified, noncalculable loss, such is insufficient to satisfy a party's reciprocal burden to rebut an opposing party's properly supported motion for summary judgment. See id.
 {¶ 34} In the instant case, Trombley alleges that attorney Calamunci was negligent in failing to attend the January 7, 2002 damages hearing in the Reynolds case, and in failing to inform Trombley of the judgment against him. In order for this aspect of Trombley's case to survive appellees' motion for summary judgment, the evidence must establish a calculable financial loss resulting from that failure to attend. See id.
 {¶ 35} As indicated above, prior to Calamunci's representation of Trombley, the court had already granted Reynolds's motion for summary judgment on her counterclaim and had denied Trombley's motion for reconsideration. The court, in its February 7, 2002 ruling, found that Trombley had breached the lease agreement from March 2000 through September 2000. The $60,000 award of damages was based solely on the monthly lease amount under the agreement, and did not include an additional amount for Calamunci's failure to attend the hearing. Moreover, Trombley, after learning of the judgment against him, was able to settle the matter with Reynolds for just $7,253, an amount much lower than the judgment amount.
 {¶ 36} On these facts, the trial court in the instant matter granted summary judgment in favor of appellants, specifically finding that "[p]laintiff has not provided any evidence, other than mere speculation, that he suffered damages as a result of defendants' alleged negligence."
 {¶ 37} Arguing against this conclusion, Trombley asserts that he did, in fact, make a showing of actual calculable damages by his statement that he had to "quick sale" his rental property at a loss in order to pay the Reynolds judgment. The court is not persuaded by this argument.
 {¶ 38} Trombley has clearly failed to produce any evidence that he suffered damages with respect to either the awarding of or the amount of the judgment in the Reynolds matter. Instead, Trombley seeks to show that he suffered damages based upon the fact that in order to pay the judgment, he had to sell property hurriedly and, therefore, at a loss. In the opinion of this court, even if Trombley were able to prove the amount of this alleged loss, the loss is not one that is properly attributable to Calamunci and his conduct in the case.
 {¶ 39} Because Trombley has failed to demonstrate a calculable financial loss resulting from Calamunci's conduct — either in failing to attend the hearing or in failing to inform Trombley of the judgment against him — Trombley's first assignment of error is found not well taken.
 {¶ 40} Trombley argues in his second assignment of error that the trial court erred in finding as a matter of law that he failed to meet the statute of limitations in the Wesson matter.
 {¶ 41} As stated by the Supreme Court of Ohio in Zimmie v. Calfee,Halter Griswold (1989), 43 Ohio St.3d 54:
 {¶ 42} "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever is later." Id., at syllabus (citation omitted).
 {¶ 43} Determination of the accrual date of a legal malpractice action is a question of law that is reviewed de novo on appeal. Whitaker v.Kear (1997), 123 Ohio App.3d 413, 420. Although determination of when the attorney-client relationship for a particular transaction terminates is generally a question of fact, Omni-Food Fashion, Inc. v. Smith
(1988), 38 Ohio St.3d 385, 388, where the evidence is clear and unambiguous, so that reasonable minds can come to but one conclusion from it, the matter may be decided as a matter of law. See Koerber v. Levey Gruhin, Attorneys at Law (June 16, 2004), 9th Dist. No. 21730,2004-Ohio-3085, at ¶ 19; Sinsky v. Gatien (August, 30, 2000), 9th Dist. No. 19795.
 {¶ 44} Because an attorney-client relationship is consensual in nature, the actions of either party to the relationship can affect its continuance. Brown v. Johnstone (1982), 5 Ohio App.3d 165, 167. "[C]onduct which dissolves the essential mutual confidence between attorney and client signals that termination of the professional relationship." Id., at 166.
 {¶ 45} The trial court found that both the cognizable event and the date the attorney-client relationship terminated was on April 15, 2002, the date the Wesson matter was scheduled to go to trial. The court based its finding as to the cognizable event on the fact that on April 15, 2002, when attorney Farah advised Trombley to sign over the property and sign a judgment for $84,000, Trombley took matters into his own hands and negotiated his own settlement. In addition, the court cited deposition testimony by Trombley wherein he specified that he was not happy with appellees' representation as of that particular date. Trombley does not dispute this finding on appeal.
 {¶ 46} Trombley does dispute the trial court's finding that the attorney-client relationship ended on April 15, 2002. The trial court, in determining April 15, 2002, to be the termination date, relied not just upon the fact that that was the date that Trombley refused to take the advice of his attorney — and, instead, negotiated his own deal with opposing counsel — but also on the fact that, by Trombley's own admission, after April 15, 2002, appellees did not provide any additional services to Trombley. Trombley testified in this regard as follows:
 {¶ 47} Q. As of [April 15, 2002] the problem was solved? You furnished $10,000 judgement [sic] and Calamunci didn't represent you?
 {¶ 48} A. Yes.
 {¶ 49} Q. Because the matter was settled?
 {¶ 50} MR. MAGEE: Objection, it's a legal conclusion.
 {¶ 51} Q. Well, did Calamunci represent you further relative to the Wesson Matter, and, if so, for what?
 {¶ 52} A. No, he didn't represent me for anything.
 {¶ 53} Q. Because the case was settled?
 {¶ 54} A. Yes.
 {¶ 55} Based on the foregoing evidence of Trombley's belief, together with attorney Farah's oral request to withdraw, it cannot reasonably be disputed that the mutual confidence between Trombley and the appellees was dissolved, at least with respect to the Wesson matter, on April 15, 2002.
 {¶ 56} Trombley disputes this conclusion, arguing that, in view of the trial court's denial of Farah's request to withdraw, the least ambiguous termination date would be April 25, 2002, the date of the judgment entry in the Wesson matter.
 {¶ 57} Again, the court is not persuaded by Trombley's argument. The conduct the court looks to in order to determine the termination date of the attorney-client relationship is that of the attorney and the client, not that of the court. In this case, the evidence concerning the conduct of Trombley and Farah is clear and unambiguous, so that reasonable minds can come to but one conclusion, and that is that the date the attorney-client relationship terminated was on April 15, 2002.
 {¶ 58} Because Trombley's action in this matter was not filed until April 24, 2003, it was filed nine days beyond the one year statute of limitations. Thus, the trial court was correct in its conclusion that Trombley's claim of legal malpractice arising from the Wesson litigation is barred by the applicable statute of limitations. Accordingly, Trombley's second assignment of error is found not well taken.
 {¶ 59} It is difficult to accuarately characterize attorney Calamunci's representation of appellant Trombley. "Ineffective assistance," as a term of art, assumes some threshold level of assistance, and here there was none. Woefully inadequate probably comes as close as any, given his not-so-benign neglect of both matters entrusted to him. Accordingly, it is hoped that this opinion offers no vindication to attorney Calamunci, as it also offers no solace to appellant Trombley.
 {¶ 60} In Reynolds, Calamunci told Trombley that he (Trombley) did not need to attend the assessment of damages hearing set for January 7, 2002. Calamunci himself then simply skipped that hearing, a combination of factors which led inexorably to a virtually maximum adverse judgment against his client. Incredibly, Calamunci did not deign to pass along the bad news to Trombley about the judgment. In Wesson — presumably unprepared himself — Calamunci dispatched a wholly unprepared attorney from his firm to the trial (!) set for April 15, 2002. The substitute lawyer's advice to Trombley was to deed the property to the plaintiff and consent to a judgment of $84,000. When Trombley balked, the attorney attempted to withdraw. Interestingly, and ironically, Trombley himself was able to negotiate much more favorable terms as to both matters, having been left functionally pro se.
 {¶ 61} Against this background of ineptitude and neglect, Calamunci's "Letter of Engagement" of December 21, 2001, rings particularly hollow. Trombley signed the letter, and also signed a significant fee check, perhaps inspired by hopes and expectations. The letter itself is replete with legalistic flapdoodle, as well as flowery promises and assurances — all of which were unfulfilled. The fee, coupled with the services so assiduously unrendered, present a case study as to why the public harbors a deep and abiding distrust of lawyers.
 {¶ 62} For the foregoing reasons, the judgment of the trial court is affirmed. Pursuant to App.R. 24, costs are assessed to the appellant.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Skow, J. Concurs.
Handwork, J., Singer, P.J., Concur and Write Separately.