[Cite as *Firror v. Lydon*, 2018-Ohio-1662.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RANDALL FIROR, Individually and as Executor of the Estate of Hugh V. Firor, M.D., | : | APPEAL NO. C-170137 TRIAL NO. A-1505916 |
| THOMAS FIROR, M.D., Individually, | : | *O P I N I O N.* |
| DAVID HOMER, as Successor Trustee of the Hugh V. Firor, M.D., Revocable Trust, | : | |
| Plaintiffs-Counterclaim Defendants/Appellants, | : | |
| and | : | |
| RANDALL FIROR, and THOMAS FIROR, M.D., as Co-Trustees of the Betty Bourdon Firor Revocable Trust, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| DEBORAH R. LYDON, | : | |
| Defendant-Appellee, | : | |
| and | : | |
| DINSMORE & SHOHL LLP, | : | |
| Defendant-Counterclaim Plaintiff/Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: April 27, 2018

*F. Harrison Green Co. LPA,* and *F. Harrison Green,* for Plaintiffs-Counterclaim Defendants/Appellants,

*Pinales Stachler Young Burrell & Crouse, Thomas L. Stachler* and *Shawn M. Young*, for Defendant-Appellee and Defendant-Counterclaim Plaintiff/Appellee.

**CUNNINGHAM, Presiding Judge.**

{¶1} Plaintiffs-counterclaim defendants/appellants, the sons of Hugh V. Firor, M.D., ("Dr. Firor") Thomas Firor, M.D., ("Thomas") and Randall Firor ("Randall"), in their individual and fiduciary capacities to their father's estate and trust and for their mother's trust, and David Homer, as successor trustee to Dr. Firor's revocable trust, for ease of discussion collectively referred to as "the Firors," engaged the legal services of defendant-appellee attorney Deborah R. Lydon and her law firm defendant-counterclaim plaintiff/appellee, Dinsmore & Shohl LLP, ("Dinsmore")to recover funds that Thomas and Randall's sister, Nancy Kibbee, had fraudulently taken from their father. The Firors ultimately sued Lydon and Dinsmore for legal malpractice, and Dinsmore counterclaimed for unpaid legal fees.[1] The trial court granted Lydon and Dinsmore's motion for summary judgment on the Firors' claims and on Dinsmore's counterclaims.

{¶2} Because the Firors' legal-malpractice claim was barred by the statute of limitations, and because no genuine issues of material fact remain as to whether $161,423.83 in fees remain uncollected for Lydon and Dinsmore's legal services in the Kibbee litigation, we affirm the trial court's judgment.

### The Kibbee Litigation

{¶3} Thomas and Randall sought Lydon's services based on their concerns that their sister had stolen millions of dollars from their father, which should have been distributed equally among Thomas, Randall, and Nancy upon Dr. Firor's death. Thomas and Randall learned that Nancy, with the assistance of her counsel, had applied to the Hamilton County Probate Court for relief from administration of Dr.

---

[1] The Firors' mother's trust and its cotrustees, Randall and Thomas, are not counterclaim defendants.

Firor's estate, claiming that the estate was worth $6,000 and not the $1 to $3 million that Thomas and Randall claimed should have been in the estate. Thomas and Randall entered into written agreements of engagement with Lydon and Dinsmore in which they agreed to pay legal fees as billed at a blended rate of $295 per hour.

{¶4} Lydon's investigation revealed that Nancy had taken control of her father's personal accounts, his retirement funds, funds in the Hugh V. Firor, M.D., Revocable Trust, their late mother's trust (the Betty Bourdon Firor Revocable Trust), and other assets. Lydon was able to defend some of Dr. Firor's assets for Thomas and Randall, including defeating Nancy's requests for relief from administration and appointment as executor of her father's estate, having Thomas and Randall appointed as cotrustees of their mother's trust, and securing Homer's appointment as successor trustee of Dr. Firor's trust. Homer, a licensed attorney, is Thomas' best friend. The Firors retained Lydon and Dinsmore to represent them in their various fiduciary capacities, in addition to pursuing their litigation against Kibbee.

{¶5} Throughout the litigation, Thomas and Randall had told Lydon that one of their primary goals in the Kibbee litigation was to uncover the truth regarding Kibbee's alienation of them from their father during the last years of his life. Kibbee had prevented the two from seeing their father. Thomas and Randall believed that Kibbee had unduly influenced their father and had transferred most of his funds to herself while she controlled his affairs.

{¶6} At the outset of the litigation, Lydon had explained to the Firors the difficulties in collecting their father's lost assets. In February 2013, she told them in an email that if Kibbee had taken the funds and had "spent [them] all, and declared bankruptcy at some point, it could be hard to get back from her." Thomas and

4

Randall nonetheless rejected potential settlements with Kibbee and opted to proceed with litigation.

{¶7} By mid-2013, Lydon had been successful in recovering $80,000 of their father's retirement accounts, and $55,000 that Kibbee had taken from their father's trust. In June 2013, Lydon and Dinsmore filed an action against Kibbee and her attorney in Hamilton County Common Pleas Court. Following extensive discovery and pretrial practice, in 2014, Kibbee's attorney agreed to pay the limits of her insurance coverage—$100,000—to Thomas and Randall to settle their claim. They agreed to allocate the settlement funds against the attorney fees incurred in the litigation. In connection with the settlement, the Hamilton County Probate Court approved all fees incurred by Lydon and submitted by Randall as the successor trustee of his father's trust.

{¶8} Over the course of the litigation, Lydon and Dinsmore conducted extensive discovery proceedings, reviewed over 40,000 documents, exchanged over 3,000 emails with their clients, and engaged in litigation in several venues. Lydon and Dinsmore achieved significant results for the Firors in taking control over their father's assets from Kibbee and in discovering proof of her theft from and undue influence over Dr. Firor. As a result of her efforts, Lydon obtained over $235,000 for the Firors, a piece of real estate valued at $7,000, access to a judgment over $43,000, a contempt judgment against Kibbee for $6,300, and access to over $6,000 for the Betty Firor trust.

{¶9} But Lydon and Dinsmore had also collected approximately $180,000 in fees and expenses from the Firors. In June 2014, the Firors stopped paying the regularly submitted invoices for services rendered.

{¶10} On July 7, 2014, the event that Lydon had warned Thomas and Randall of occurred. Kibbee filed for bankruptcy protection and received an automatic stay from any litigation filed against her. The next day, Lydon informed the Firors that the bankruptcy stay meant that Dinsmore's work on their behalf in the litigation to recover assets was essentially over. She also told the Firors that Dinsmore would not take on any additional matters unless they could bring their outstanding balances up to date.

### The Firors' Claims and Dinsmore's Counterclaims

{¶11} On November 2, 2015, the Firors filed a verified complaint, ultimately amended, against Lydon and Dinsmore, in which they alleged that she and her firm had billed them for work in excess of an amount, not specified at the time of engagement, that they claimed they had told Lydon not to exceed. They also claimed that Lydon and Dinsmore had been negligent in failing to warn them of the difficulty of collecting Kibbee's assets, particularly if she declared bankruptcy, and in failing to keep them informed of the spiraling costs of the Kibbee litigation. The amended verified complaint was filed on December 28, 2015. Attached to the complaint was a tolling agreement signed by the parties. The agreement suspended the running of the limitations period for a period of days in mid-2015. One month later, Thomas, Randall, and Homer, in their individual and fiduciary capacities, each filed sworn verifications that the statements made in the amended verified complaint were true.

{¶12} Lydon and Dinsmore answered, and Dinsmore filed a counterclaim seeking $161,423.83 in unpaid legal bills. In September 2016, Lydon and Dinsmore moved for summary judgment on the Firors' claims, and Dinsmore moved for summary judgment on its counterclaims. Dinsmore's motion was ultimately supported by three affidavits submitted by Lydon, each with numerous exhibits

attached, describing her actions and her communications with the Firors. Also attached to the motion was the affidavit of Victor A. Walton, an experienced Cincinnati litigation attorney. He stated that based upon his experience in the Cincinnati legal community and his review of Lydon's affidavit and attached materials, including the billing records, "and the related pleadings in the underlying litigation matters involving Kibbee," the legal fees of $350,000 were fair, reasonable, and not excessive. Having reviewed the extensive email and letter records of communications between Lydon and the Firors, Walton also stated that in his opinion Lydon had not breached any duty of communication with her clients.

{¶13} The Firors responded with a memorandum in opposition to the summary-judgment motion. Attached to the memorandum was a 22-page report identified as Exhibit A. The report had been prepared by the Firors' expert witness, Columbus attorney Jonathan Coughlin. The report was signed, but was not sworn to or certified, and was incorporated into an attached affidavit. In the report, Coughlin had given his opinion about whether Lydon had breached the standard of care to her clients. That opinion was also contained in Coughlin's deposition testimony, filed with the trial court on July 20, 2016.

{¶14} On December 1, 2016, the trial court entered summary judgment in favor of Lydon and Dinsmore on the Firors' claims. The court stated that the Firors had failed to produce "expert testimony showing a specific duty to advise a client as to the collectability of individual defendants, [or] how [Lydon and Dinsmore] had breached that duty." The court also entered summary judgment for Dinsmore on its counterclaims for unpaid fees. The court's entry of judgment became final and appealable in March 2017, when the court fully disposed of the counterclaims. The Firors appealed.

### *The Firors' Legal-Malpractice Claims Are Time-Barred*

{¶15} In their first assignment of error, the Firors allege that the trial court erred in granting summary judgment on claims raised in their amended verified complaint. They argue both that their claims against Lydon and Dinsmore were not barred by the statute of limitations, and that Lydon had breached her duty to communicate with her clients. We disagree.

{¶16} Although the trial court did not expressly rule on the statute-of-limitations issue when it entered summary judgment for Lydon and Dinsmore, the matter was argued to the court. In their answer, Lydon and Dinsmore had raised the affirmative defense that the Firors' claims were time-barred. Lydon and Dinsmore moved for summary judgment on a number of grounds, including that the complaint had been filed outside the statute-of-limitations period. And the Firors argued against the issue in their memorandum in opposition, responding to the statute-of-limitations argument with reference only to their amended verified complaint and to the tolling agreement attached as an exhibit to the complaint.

{¶17} The function of summary judgment is to determine from the evidentiary materials properly before the court whether triable factual issues exist, regardless of whether the facts of the case are complex. A court is not precluded from granting summary judgment merely because of the complexity or length of the factual record. *See Gross v. Western-Southern Life Ins. Co.*, 85 Ohio App.3d 662, 666-667, 621 N.E.2d 412 (1st Dist.1993).

{¶18} We review summary-judgment determinations de novo, without deference to the trial court's ruling. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8; *see also Capital Fin. Credit, L.L.C. v. Mays*, 191 Ohio App.3d 56, 2010-Ohio-4423, 944 N.E.2d 1184, ¶ 3 (1st Dist.).

{¶19} A motion for summary judgment shall be granted if the court, upon viewing the inferences to be drawn from the underlying facts set forth in the pleadings, depositions, answers to interrogatories, written admissions, and affidavits in a light most favorable to the party opposing the motion, determines (1) that no genuine issue of material fact remains to be litigated, (2) that the moving party is entitled to judgment as a matter of law, and (3) that the evidence demonstrates that reasonable minds can come to but one conclusion and that conclusion is adverse to the party opposing the motion. *See* Civ.R. 56(C); *see also Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶20} The party moving for summary judgment "bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims" or defenses. *Dresher* at 293. When, as here, the moving party discharges that burden, the nonmoving party then has a reciprocal burden of specificity and cannot rest on the allegations or denials in the pleadings, including verified pleadings, but must "set forth specific facts" by the means listed in the rule, showing that a triable issue of fact exists. *See id.*; *see also Perkins v. 122 E. 6th St., LLC*, 2017-Ohio-5592, 94 N.E.3d 207, ¶ 6 (1st Dist.). If the nonmoving party does not discharge its reciprocal burden, summary judgment, if appropriate, shall be entered against it. *Dresher* at 293.

{¶21} The substantive law governing the Firors' claims and Lydon and Dinsmore's statute-of-limitations defense identifies the factual issues that are material and whether Lydon and Dinsmore are entitled to judgment as a matter of law. *See Gross*, 85 Ohio App.3d at 666-667, 621 N.E.2d 412.

*The Firors' Claims Sound in Legal Malpractice*

{¶22} In their amended verified complaint, the Firors brought three claims against Lydon and Dinsmore: (1) breach of contract related to excessive billing; (2) the negligent provision of legal services and legal advice; and (3) breach of fiduciary duty. But for purposes of applying the proper statute of limitations, the cause of action is determined not from the language or form of the complaint, but from the gist—the essential ground or object—of the complaint. *See Hibbett v. Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832 (1st Dist.1982); *see also Chateau Estate Homes, LLC v. Fifth Third Bank*, 1st Dist. Hamilton No. C-160703, 2017-Ohio-6985, ¶ 11.

{¶23} Here, each of the Firors' claims arose out of the manner in which they were represented by Lydon and Dinsmore within the attorney-client relationship. Thus, their claims sound in legal malpractice, despite being labeled otherwise. *See Taft, Stettinius, & Hollister, LLP v. Calabrese,* 2016-Ohio-4713, 69 N.E.3d 72, ¶ 13 (1st Dist.). We note that a law firm may be vicariously liable for legal malpractice only when one or more of its principals or associates are liable for legal malpractice. *See Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, paragraph two of the syllabus.

{¶24} The determination of whether a statute of limitations bars claims often presents a mixed question of fact and law. But, as here, in the absence of genuine issues of material fact, the application of a statute of limitations presents a question of law appropriate for resolution by summary judgment. *See, e.g., Calabrese* at ¶ 13; *see also Cyrus v. Henes*, 89 Ohio App.3d 172, 175, 623 N.E.2d 1256 (9th Dist.1993).

### A One-Year Period to Bring Legal-Malpractice Claims

{¶25} Since the Firors sought recovery for damages allegedly caused by legal malpractice, their claims were subject to the one-year statute-of-limitations period

set forth in R.C. 2305.11(A). The Firors filed their first verified complaint and began this action on November 2, 2015. Thus, we must determine whether there are genuine issues of material fact remaining as to whether the Firors' causes of action accrued within one year of that date, or before the expiration of any extension of the statutory period effected by the tolling agreement.

{¶26} Under R.C. 2305.11(A), a cause of action for legal malpractice accrues and the limitations period begins to run either (1) when there is a cognizable event by which the plaintiff discovers or should discover the injury giving rise to a claim and is put on notice of the need to pursue possible remedies against the attorney; or (2) when the attorney-client relationship for that particular transaction terminates, whichever occurs later. *See Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus; *see also Calabrese* at ¶ 18. A cognizable event is "some noteworthy event" that would alert reasonable persons that they have been damaged as a result of improper representation, such as when a client learns of an adverse decision in litigation. *See Zimmie* at 58; *see also Cutcher v. Chapman*, 72 Ohio App.3d 265, 267, 594 N.E.2d 640 (1st Dist.).

{¶27} Here, it is unrebutted that the "noteworthy event" that alerted the Firors of an alleged injury resulting from Lydon's representation occurred on July 8, 2014, the day after Kibbee filed for bankruptcy protection. The Firors argue that they were under the belief that Kibbee could not file for bankruptcy because she had already filed a similar action two years before. In their amended verified complaint, the Firors alleged that Lydon had argued this point in probate court, and that they had been injured by Lydon's failure to either properly investigate the prior bankruptcy or give them appropriate advice about the risk of a subsequent bankruptcy filing.

11

{¶28} In her first affidavit in support of summary judgment, Lydon stated that she had informed the Firors in a telephone conference on that date that Kibbee had filed for bankruptcy. Lydon explained that the automatic stay on litigation against Kibbee afforded by the bankruptcy filing meant that Lydon and Dinsmore's efforts to recover funds from Kibbee were effectively over. Thomas admitted in his deposition, an excerpt of which is attached as an exhibit to Lydon's second affidavit in support of summary judgment, that the Firors had learned of the bankruptcy filing from Lydon on July 8, 2014. Thus, under the first prong of *Zimmie*, no genuine issue of material fact remains as to whether, by July 8, 2014, a cognizable event, whereby the Firors had discovered the injury that gave rise to their claims, had occurred.

{¶29} We must next determine if, under the second prong of *Zimmie*, the Firors' attorney-client relationship with Lydon and Dinsmore on the Kibbee matters terminated after the July 8, 2014 cognizable event and within the prescribed period. Because an attorney-client relationship is a consensual one, the actions of either party may signal the termination of the relationship. *See Trombley v. Calamunci, Joelson, Manore, Farah & Silvers, L.L.P.*, 6th Dist. Lucas No. L-04-1138, 2005-Ohio-2105, ¶ 44; *see also Sandor v. Marks*, 9th Dist. Summit No. 26951, 2014-Ohio-685, ¶ 13.

{¶30} On appeal, the Firors maintain that Lydon and Dinsmore's last day of representation on this matter was September 16, 2014. But this assertion is not supported by evidence cognizable under Civ.R. 56. The Firors cite only to Lydon and Dinsmore's memorandum in support of summary judgment. But a memorandum is not evidence of the kind contemplated by Civ.R. 56(C) or 56(E) and with which a party may discharge its reciprocal burden to demonstrate the existence of triable issues.

{¶31} The memorandum does mention September 16. But the date is referenced only as the date of a draft letter from Thomas to Dinsmore's managing partner. That letter was, in turn, described in an email prepared by Thomas, and that email was attached as an exhibit to Lydon's first affidavit in support of summary judgment. But in that email, Thomas acknowledged that Lydon had withdrawn from representation in the Kibbee case on July 8, 2014, and had instructed them to get another attorney if they wished to pursue the bankruptcy matter.

{¶32} Thomas also admitted in his deposition, an excerpt of which is attached as an exhibit to Lydon's second affidavit in support of summary judgment, that the Firors had considered Lydon's representation terminated in July 2014. And four days after Thomas had sent his email to his brother and to Homer, stating his belief that Lydon had withdrawn from representation on July 8, 2014, the Firors discussed consulting another attorney.

{¶33} While substantial evidence supports the contention that the Firors believed that Lydon and Dinsmore had terminated their representation for the Kibbee matter in July 2014, Lydon maintained, in her first affidavit, that July 22, 2014, was "the last date for which services were rendered by Dinsmore and billed to [the Firors], other than the Estate [representation]." Thus, construing the facts most strongly in favor of the Firors, the nonmoving party, there is no genuine issue of material fact remaining as to whether the attorney-client relationship for the Kibbee matters terminated on July 22, 2014.

{¶34} While Dinsmore's representation of the Firors in the administration of the estate continued until September 15, 2014, under the second prong of *Zimmie*, the statute of limitations begins to run "when the attorney-client relationship for * * * [this] *particular transaction or undertaking* terminates." (Emphasis added.)

*Zimmie*, 43 Ohio St.3d at 58, 538 N.E.2d 398. Here, as stated in the amended verified complaint, the basis of the Firors' claims is Lydon's and Dinsmore's alleged negligence committed, not in the administration of the probate estate, but in efforts to find and recover the unaccounted-for funds transferred to Kibbee while she controlled the affairs of Dr. Firor. Even construing the facts most strongly in favor of the Firors, the administration of the estate is not the same transaction or undertaking as that challenged in the Firors' action.

{¶35} Thus, there is no genuine issue of material fact remaining as to whether the Firors' cause of action accrued on July 22, 2014, the later of the dates memorializing a cognizable event and the termination of the attorney-client relationship.

### The Tolling Agreement

{¶36} Nonetheless, the Firors argue that even if they should have filed their lawsuit before July 22, 2015,—one year after the date of accrual—the tolling agreement suspended the running of the limitations period for their malpractice claims. Without elaboration, the Firors argue that under the tolling agreement, their claim was filed within the extended statutory period. We disagree.

{¶37} The tolling agreement was entered into by the parties to effect their "desire to toll any statute of limitations, to allow the parties to investigate and to negotiate an amicably [sic] resolution of any disputes either of them may have with the other." The agreement, attached as an exhibit to the amended verified complaint, was signed by all the parties. It provided, in pertinent part, that:

> If not terminated earlier by notice, this Agreement shall terminate on September 30, 2015 (the "Termination Date"). The period from the date this Agreement is entered into through

14

September 30, 2015, shall not be included in determining the applicability of any statute of limitations in any action involving the Parties. The running of any period relevant to any applicable statute of limitations that may be applicable to any claims shall re-commence running on the day after the Termination Date.

The effective date of the tolling agreement was July 9, 2015.

{¶38} Absent the agreement, the one-year statutory period for the Firors to bring their malpractice claims would have expired on July 22, 2015. On the effective date of the agreement, 13 days remained in that period. Once the tolling agreement expired on September 30, 2015, "[t]he running" of the statutory period "re-commence[d]," and the Firors had 13 more days, or until October 13, 2015, in which to bring their claims. It is clear from our record that the Firors brought their claims on November 2, 2015,—some 33 days after the statutory period recommenced running and 20 days outside the statutory period as extended by the tolling agreement.

{¶39} There remains no genuine issue of material fact as to whether the Firors sought recovery for damages allegedly caused by Lydon's and Dinsmore's legal malpractice outside of the statute-of-limitations period as extended by the tolling agreement. And Lydon and Dinsmore are entitled to judgment as a matter of law on the Firors' malpractice claims. Therefore, the trial court did not err in entering summary judgment on those claims. *See* Civ.R. 56(C); *see also* R.C. 2305.11(A). The first assignment of error is overruled.

### *Dinsmore's Counterclaims for Unpaid Fees*

{¶40} In two assignments of error, the Firors challenge the trial court's entry of summary judgment on Dinsmore's counterclaims for uncollected legal fees against

the counterclaim-defendants Randall, individually and as the executor of his father's estate; Thomas; and Homer, as successor trustee of Dr. Firor's trust.

{¶41} Civ.R. 56(A) makes summary judgment available to a party seeking to recover upon its own claims or counterclaims. *See Mays*, 191 Ohio App.3d 56, 2010-Ohio-4423, 944 N.E.2d 1184, at ¶ 4. Where a party seeks affirmative relief on its own counterclaims as a matter of law, it bears the burden of affirmatively demonstrating that there are no genuine issues of material fact with respect to every essential element of its claims. *See Dresher*, 75 Ohio St.3d at 294, 662 N.E.2d 264; *see also Mays* at ¶ 5. And its motion for summary judgment must be denied if the party fails to satisfy this initial burden. The nonmoving party's reciprocal burden to establish the existence of genuine issues of material fact by evidence cognizable under Civ.R. 56 arises only if the movant meets its initial burden. *See Mays* at ¶ 5.

{¶42} When, as here, the party moving for summary judgment discharges its initial burden to identify the absence of genuine issues of material fact on an essential element of the nonmoving party's claim, the nonmoving parties then have reciprocal burdens of specificity and cannot rest on the allegations or denials in the pleadings, but must set forth specific facts, by the means listed in Civ.R. 56(C) and 56(E), demonstrating that triable issues of fact exist. *See* Civ.R. 56; *see also Dresher* at 293, 662 N.E.2d 264.

{¶43} To prevail on its counterclaims for fees, Dinsmore was required to establish the existence of a contract for fees, performance on its part, breach of a duty to perform by the counterclaim defendants, and its own damage or loss. *See Brunsman v. W. Hills Country Club*, 151 Ohio App.3d 718, 2003-Ohio-891, 785 N.E.2d 794, ¶ 11 (1st Dist.).

{¶44} In their second assignment of error, the counterclaim defendants argue that the parties never had a written or an oral contract for legal fees. Yet, in their amended verified complaint, the counterclaim defendants admitted that they had "engaged" Dinsmore to recover funds from Kibbee, that Lydon's alleged malpractice had occurred "during the course of representation," and that Dinsmore had "collected" approximately $180,000 in fees from them. Moreover, in Lydon's second affidavit in support of summary judgment, she stated that she had attended the depositions of Thomas, Randall, and Homer. She properly attached to her affidavit excerpts of their deposition transcripts in which each acknowledged the existence of written letters of engagement with Dinsmore. There is no genuine issue of material fact remaining as to the existence of contracts for legal services. The second assignment of error is overruled.

{¶45} In their third assignment of error, the counterclaim defendants allege that the trial court erred by failing "to review the reasonableness, necessity and benefit" of Dinsmore's legal services. First, they argue that Dinsmore has not met its burden to provide a detailed report "on hours spent and the nature of the effort expended," particularly to support Dinsmore's claim for quantum meruit. Next, they argue, without citation to any authority, that because Lydon had failed to communicate with her clients regarding the mounting fees, Dinsmore was not entitled to collect fees.

{¶46} These arguments must also fail. Dinsmore supported its motion for summary judgment on its counterclaims with Walton's and Lydon's affidavits. These affidavits clearly identified the existence of written contracts of engagement that provided that Dinsmore was to be paid on an hourly basis for legal services performed, that Dinsmore performed the work, that it regularly billed the

counterclaim defendants for the work performed, and that $161,423.83 remained unpaid. In his affidavit, Walton stated that he had reviewed the litigation and the attached billing records for the "underlying litigation matters involving Kibbee." He concluded that the fees charged were fair, reasonable, and not excessive. He also stated that Lydon had not breached any duty of communication with her clients.

{¶47} Dinsmore thus discharged its initial burden to identify the absence of genuine issues of material fact on the essential elements of its counterclaims and triggered the counterclaim defendants' reciprocal burden of specificity under Civ.R. 56(E). The counterclaim defendants have failed to discharge their burden.

{¶48} The only evidence cognizable under Civ.R. 56 offered to rebut Dinsmore's summary-judgment motion was Coughlin's deposition testimony and the statements made by the counterclaim defendants in their amended verified complaint.

{¶49} At one point in their appellate brief, the counterclaim defendants refer to the report prepared by Coughlin, submitted as Exhibit A to their memorandum in opposition. The signed, undated report was not sworn to, certified, or incorporated into an attached affidavit filed in the trial court and thus was not the type of evidentiary material contemplated under Civ.R. 56(C) or 56(E). *See State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 473, 692 N.E.2d 198 (1998). "Other types of documents may be introduced as evidentiary material only through incorporation by reference in a properly framed affidavit. Documents that have not been sworn, certified, or authenticated by way of affidavit 'have no evidentiary value.' " *Mitchell v. Internatl. Flavors & Fragrances, Inc.*, 179 Ohio App.3d 365, 2008-Ohio-3697, 902 N.E.2d 37, ¶ 17 (1st Dist.).

{¶50} A court may consider evidence other than that specifically listed in Civ.R. 56 only when there is no objection to that evidence. *See Marshall* at 473; *see also Cincinnati Ins. Co. v. Schwerha*, 7th Dist. Mahoning No. 04 MA 257, 2006-Ohio-3521, ¶ 12; *compare Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 2006-Ohio-3172, 855 N.E.2d 1272, ¶ 22 (1st Dist.) (holding that a court may consider evidence other than that listed in Civ.R. 56 when there is no objection). Here, Dinsmore, in a motion in limine and its reply memorandum in support of summary judgment, expressly objected to the use of the report as a basis for resolving summary judgment.

{¶51} In advancing their third assignment of error, the counterclaim defendants cite to the report only as evidence that Lydon had breached a duty to her clients. That evidence was otherwise properly before the trial court in Coughlin's filed deposition testimony.

{¶52} In that deposition testimony, Coughlin stated that he had no opinion on the measure of damages due to Dinsmore because he had "not been retained to testify about damages." He admitted that he had reviewed only a small portion of the billing records, and that he hadn't reviewed any billing records for the work performed for Dr. Firor's trust. While he stated that Lydon had breached the standard of care due her clients "by virtue of the excessive fees," he admitted that he had reached his opinion without having reviewed litigation records that filled an additional "40 bankers boxes." He admitted that he had seen no written evidence that supported the allegation that Lydon and the Firors had an understanding that she was not to incur fees in an unspecified amount "beyond their initial disclosure of funds available for the prosecution of the claims," as stated in the amended verified complaint. He admitted that he had based his opinion that Lydon had failed to

communicate sufficiently with her clients largely upon the statements of his clients in the amended verified complaint. And he acknowledged that his opinion could change if those statements "were not correct."

{¶53} We note that the Ohio Supreme Court has stated that, generally, sworn pleadings like a verified complaint "constitute evidence" for some purposes under Civ.R. 56. *State ex rel. Spencer v. East Liverpool Planning Comm.*, 80 Ohio St.3d 297, 298, 685 N.E.2d 1251 (1997) (holding that the nonmoving party's reciprocal duty to respond with additional evidence to set forth specific facts as per Civ.R. 56(E) was not triggered when the defendant, in moving for summary judgment, had failed to satisfy its initial burden under Civ.R. 56 by setting forth evidence countering the allegations made in the plaintiff's verified complaint). Yet where a party moving for summary judgment has sufficiently rebutted the allegations made in a verified complaint, the nonmoving party still bears a reciprocal burden to respond with additional evidence, setting forth specific facts under Civ.R. 56(E) to counter the movant's supported claim that no genuine issue remains for trial. *See Miller v. Blume*, 7th Dist. Noble No. 13 NO 398, 2013-Ohio-5290, ¶ 29-30. Under those conditions, an assertion in a pleading, even a sworn one, is insufficient to meet the reciprocal burden of a nonmoving party under Civ.R. 56(E). *Id.* at ¶ 30. Moreover, averments in a verified complaint may be accepted as evidence only to the extent that, like an affidavit, they present evidence within the personal knowledge of the affiant. *See Brunner Firm Co., L.P.A. v. Bussard,* 10th Dist. Franklin No. 07AP-867, 2008-Ohio-4684, ¶ 14.

{¶54} Here, Dinsmore has rebutted the allegations made in the verified complaint, largely through the deposition testimony of the counterclaim defendants found as attachments to Lydon's affidavits. Homer admitted in his deposition that

he had not read the amended complaint before signing the verification stating that statements in the complaint were "true to the best of my knowledge." Each counterclaim defendant's deposition testimony contradicts his earlier allegations in the complaint, relied upon by Coughlin in reaching his conclusions, that Lydon had exceeded a limit of fees that they had imposed and had failed to adequately communicate with them regarding the fees expended. Thomas admitted that Lydon had explained that the fees incurred would vary based upon how aggressively they wished to pursue the Kibbee funds, and that she had spelled out the various factors which could increase the overall costs of the litigation. He stated that he had had conversations with Lydon "throughout the entire process" of the litigation over the costs, and that he had never raised an objection with Lydon about the regular invoices submitted for payment. Moreover, he admitted that the Firors had never set a limit on litigation costs to be incurred in the Kibbee matters, and that he had not communicated a limit to Lydon. Homer made similar statements in his deposition, including that Dinsmore had sent regular invoices, and that there were sufficient funds in Dr. Firor's trust that he could have used to pay Dinsmore's invoices. Randall's deposition testimony echoed that of his brother and Homer.

{¶55} The counterclaim defendants did not supplement their own testimony or that of Coughlin in response to Lydon's and Walton's affidavits. In light of the counterclaim defendants' deposition testimony, we hold that their assertions in the amended verified complaint were insufficient to meet the reciprocal burden of a nonmoving party under Civ.R. 56(E). *See* Civ.R. 56; *see also Dresher* at 293, 662 N.E.2d 264; *Miller*, 7th Dist. Noble No. 13 NO 398, 2013-Ohio-5290, at ¶ 30. The trial court did not err in entering summary judgment on Dinsmore's counterclaims for uncollected fees. The third assignment of error is overruled.

**{¶56}** Accordingly, we affirm the trial court's entry of summary judgment for Lydon and Dinsmore.

Judgment affirmed.

**MILLER** and **DETERS, JJ**., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.